FRANK W. MISH, RECEIVER OF THE SURBRIDGE MANU-
FACTURING COMPANY, vs. MARTIN L. MAIN.

*Fraudulent Transfer of the `Property` of an Insolvent Corporation to
the President—Receivers—Replevin—Evidence—Protest by Notary.*

The directors of a corporation, which was engaged in the manufacture
of bicycles, made a sale of all the property of the corporation to the
president thereof, who gave to each director his personal notes, pay-
able in bicycles, for the shares of stock held by the directors respec-
tively, at the rate of twenty per cent. of the par value.   Under this
arrangement the defendant, one of the former directors, received
from the president a number of bicycles which were made from
material on hand at the time of said transfer.   The defendant knew
that the corporation was hopelessly insolvent at the time of the sale
of the assets to the president and the execution by him of his notes
so payable in bicycles, in consideration of the detendant's shares of
stock.   Plaintiff was subsequently appointed receiver of the corpo-
ration, and brought an action of replevin to obtain said bicycles from
the defendant.   *Held,* that this transaction, if the above facts were
found by the jury, was a mere contrivance to deprive the creditors of
the corporation of their rights; that it was the duty of the receiver to
avoid and nullify the same, and that the action of replevin was an
appropriate remedy.

In the above-mentioned action evidence is admissible to show judg-
ments against the corporation and mortgages executed by it, and
that the directors knew that the company was insolvent; also to show
the value of the property sold to the president, and the inadequacy
of the consideration received for that replevied in this case, and that
similar transactions had taken place between the president and a
director other than the defendant.

Where one of the questions involved in the issue is whether a corpora-
tion was insolvent or not, evidence of a notary public that he had
protested for non-payment commercial paper due by it is admissible.

Appeal from the Circuit Court for Washington County.
This was an action of replevin brought by the appellant as
receiver of the Surbridge Manufacturing Company of Wash-
ington County, against the appellee, to recover possession of
seventy bicycles.   The Surbridge Company was incorpora-
ted under the general law, on August 18, 1893, for the

purpose of manufacturing bicycles, with a capital stock of
$50,000. The president and general manager was R. G.
Surbridge, and the defendant, Main, was secretary and one
of the directors of the company. At the trial, the plaintiff,
after proving his appointment as receiver of the company,
on February 19, 1894, and an order of the Circuit Court for
Washington County authorizing him to institute this action,
offered to prove that on September 28, 1893, the defendant,
Main, together with the other directors of the company,
made a sale of all the assets and effects of the company to
the president, R. G. Surbridge, and by the terms of the sale
Surbridge was to pay for the stock subscribed or held by
the directors, at the rate of twenty per cent. of the par
value of the same, by giving his personal notes to be paid
in bicycles, which were to be made from material owned by
the company prior to such sale and transfer of the shares of
stock, and that the bicycles replevied in this action were
manufactured by Surbridge out of such material and deliv-
ered to the defendant, Main. This proof was offered in
connection with evidence that at the time of this transaction
the defendant, Main, and the other directors, knew that the
Surbridge Manufacturing Company was hopelessly insol-
vent, and that the bicycles replevied in this action were re-
moved from the premises of the company at night, by order
of Main. The refusal of the Court below (STAKE, J.), to
admit this evidence, constitutes the second bill of exception.

The first exception was taken to the refusal of the Court
to admit the testimony of a notary public, showing his pro-
test for non-payment of negotiable paper due by the Sur-
bridge Company.

The third exception was taken to the refusal of the Court
to allow the foreman of the Surbridge Company to be asked
how many men were employed by the company in the latter
part of September, 1893.

The plaintiff further proved, that the cost of making a
bicycle complete was about $45, and the cost of one with-
out tires, saddles and sprockets, about $35 ; that 274 wheels

were made after Surbridge took charge in the early part of October, which were made out of material then on hand, there being at that time about a dozen manufactured wheels owned by the company, and that the bicycles replevied in this action were made from materials transferred to Surbridge in September. The plaintiff then offered to show that the sale of the said bicycles to the defendant was upon a wholly inadequate consideration, and that at the time of the transfer of the assets of the company to Surbridge the defendant knew that the company was entirely insolvent. The refusal of the Court to admit this evidence, forms the fourth bill of exceptions.

The plaintiff proved by S. M. Schindel that he was one of the directors of the company and had sold his stock to Surbridge for twenty cents on the dollar, taking his individual notes, which were of the following tenor: " Hagerstown, Md., Sept. 30, 1893. Thirty days after date I promise to pay to the order of S. M. Schindel twelve hundred and ten dollars in 30 bicycles. No saddles, or tires, or bags, or tools. Value received. R. G. Surbridge." The fifth exception was taken to the refusal of the Court to admit said notes in evidence, upon the proffer to show that the shares of stock of the other directors were sold to Surbridge upon similar terms, and that the bicycles replevied in this action were delivered in satisfaction of such notes so given by Surbridge to Main. .

The plaintiff then offered in evidence a mortgage dated March 2, 1893, from the Surbridge Company to F. A. Baker, the defendant, Main, and others, covering the company's real estate and machinery, to secure the payment, on September 2, 1893, of the sum of $6,000; also a chattel mortgage from said company of 300 bicycles, dated April 21, 1893, in consideration of $6,000; also a bill of sale of certain machinery from said company to J. D. Main, dated August 7, 1893, in consideration of $530; also a chattel mortgage from said company to the Prentiss Tool Co. for $1,860, dated March 10, 1893. The refusal of the Court

to admit said mortgages in evidence forms the sixth bill of exceptions.

The seventh exception was taken to the rejection of evidence offered by the plaintiff to show the recovery of judgments against the Surbridge Company at the February and May terms of the Circuit Court for Washington County.

The plaintiff then offered in evidence the books of the Surbridge Company, kept by the defendant, Main, for the purpose of showing that on September 30, 1893, the indebtedness of the said company amounted to $19,556; and to the rejection of this evidence the eighth exception was taken. The plaintiff also offered to show that the entire assets of the company, not included in said mortgages, amounted in value to about $3,500. At the close of the plaintiff's case the Court instructed the jury, at the instance of the defendant, that " the plaintiff has offered no legally sufficient testimony to entitle him to recover under the pleadings in this case, and the verdict must be for the defendant;" and to the granting of this prayer the plaintiff excepted.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*Alexander Armstrong* (with whom were *M. L. Keedy, Chas. A. Little, A. R. Hagner* and *T. A. Poffenberger* on the brief), for the appellant.

The plaintiff has admitted that Surbridge became the owner of the stock, and with it the personal property of the company, including the articles referred to in this action, all of which had been delivered to Surbridge by the directors and stockholders before the receiver was appointed; and that at the time of such delivery Surbridge was conducting the business of manufacturing bicycles in the name of the Surbridge Company, but not using any corporate formalities. These facts, of course, are to be taken in connection with the other facts offered to be shown by the plaintiff and

embodied in his exceptions.   The sale made by the directors to Surbridge is directly assailed, and the illegal and fraudulent character of the sale is the gravamen of the plaintiff's cause.   We hold: 1st. That such a sale as this was void.   2nd. That it was in contemplation of law a fraud on the rights of creditors.   3rd. That it was fraudulent in fact.   4th. That the sale, being void in law and fraudulent as against the rights of creditors, no title passed from the company to Surbridge.   5th. That as no title passed to Surbridge, the title remained in the company, and upon the appointment of the receiver it vested in him, and it was not only his right, but his bounden duty to the creditors whom he represented to assert at once ownership in the property, which was done by him in the replevin proceedings instituted in this cause.   6th. That if, however, it be supposed that Surbridge acquired any title from the company under his purchase, made as aforesaid, and that such a sale was voidable and not void, that the receiver would certainly not be without remedy, but in this form of action, as in any other proper proceeding, could take the property in the interest of creditors.

That such a sale is void, is shown by the following authorities : *Morawetz on Private Corporations*, sections 787, 788, 789 and 790; *Cook on Stock and Stockholders*, sec. 653; *Hoffman Steam Coal Company* v. *Cumberland Coal and Iron Company*, 16 Md. 456; *Beach* v. *Miller*, 130 Ill. 162; *Haywood* v. *Lincoln Lumber Co.*, 64 Wis. 639; *Jones* v. *Mich. Co.*, 38 Ark. 17; *Sweeny* v. *Grape Sugar Co.*, 30 W. Va. 443; 8 Am. St. Rep. 97; *Corbett* v. *Woodward*, 5 Sawyer, 405; *Buell* v. *Buckingham*, 16 Iowa, 284; 85 Am Dec. 516.

Should, however, it be held that the sale to Surbridge stood until avoided, certainly the avoidance of the sale was open to be made in any proper proceeding at law, there being no reason why the issues involved in the insolvency of the company and the *bona fides* of the sale from the company to Surbridge should not be investigated before a

legal tribunal. Is it to be said that questions of fraud can not be gone into in this forum? *Beach* v. *Miller*, 130 Ill. 162; *Keedy, admr.,* v. *Moats,* 72 Md. 330.

Apart from authority, the question is one of very serious importance, as the grossest injustice might result to interested parties, if such a proceeding as this would not lie in behalf of a receiver of a corporation. A receiver of such a corporation is admonished that the assets of the company have been " passed around " among the directors, and he is made aware that he can recover them *in specie,* and secure the rights of the parties that he represents most effectively by taking the property in that form. What proceeding is there other than replevin to accomplish his purpose? It is speedy and it is sure; it arrests the property in the hands of an insolvent director or other party; it holds the property within the jurisdiction of the Court when it might be removed beyond the bounds of the State, beyond recovery, and beyond remedy, while the bond secures the amplest protection to any parties in whose possession the property may be found, and from whose possession it may be taken. The question of title is distinctly made, and the whole matter is open to be passed upon by the jury, with the aid of the Court, under instructions. *Perry* v. *Stowe,* 111 Mass. 60; *Beach* v. *Miller,* 17 Am. St. Reports, 293; 130 Ill. 62.

*Fred. F. McComas* and *Wm. J. Witzenbacher,* for the appellee.

The receiver lays claim to the possession of articles, as part of the assets of his trust, which are in the hands of a third party, and, even assuming the ownership thereof to have once been in the company, the receiver attempts to divest possession in such third party by reason of the prior insolvency of the company. No such rule has ever been adopted by the Courts, and no corporation or individual has ever been prohibited from disposing of its goods upon the ground of its insolvency. The present or prior insolvency of the company does not in any way reflect upon the right

of possession of the goods by the defendant, and any inquiry thereupon is clearly inadmissible.

If we now examine the proffer of testimony embodied in the second exception, we find the facts alleged to be an attempt on the part of the plaintiff to secure possession of the goods replevied upon the theory that the defendant held the goods under a transfer that was made with intent to delay, hinder or defraud creditors, and therefore void under the statute of 13 Elizabeth. Can such an inquiry be made in replevin proceedings? Clearly not. This is a proceeding before a Court of law before whom the matter of fraudulent transfers are not cognizable except in certain well-defined and limited instances. *Wanamaker* v. *Bowers*, 36 Md. 56.

The pleadings nowhere contain any allegation of fraud, neither in the declaration nor in the replication. In fact there is no suggestion anywhere that fraud is relied upon. Parol testimony to show fraud is entirely irrelevant unless there is an issue of fraud raised by the pleadings. *Timms and wife* v. *Shannon*, 19 Md., 312. Where fraud is relied upon it must be averred. *Showman and wife* v. *Miller*, 6 Md. 485. Fraud must be pleaded. *Cobbey on Replevin ss.*, §824, §781.

Where there is no allegation of fraud in pleadings, evidence to prove it will not be admitted. *Wesley et al.* v. *Thomas*, 6 H. and J. 25; *Hertle* v. *McDonald*, 2 Md. Ch. 129; *Gouvenieur* v. *Elendorf*, 5 Johns. Ch. 79; *James* v. *McKernon*, 6 Johnson, 42.

All of the proof is offered as tending to show the sale from the directors to Surbridge, and from him to Main, was fraudulent. It can be for no other purpose, for if these sales were valid, Main has a valid title and the receiver none. As evidence neither was nor could be offered to any other point; if offered to show the sales fraudulent, it is clearly inadmissible, as the proceedings will not admit testimony on this ground.

Roberts, J., delivered the opinion of the Court.

This suit was brought by the appellant, as receiver of the Surbridge Manufacturing Company, to recover possession of a number of bicycles. The facts are sufficiently set out in the reporter's statement and need not be again repeated. The record contains nine exceptions, eight of which relate to the admissibility of the proof offered, and the ninth exception is taken to the granting by the Court of the appellee's prayer, by which the case was taken from the jury. It will not be necessary to examine in detail the various exceptions to the testimony offered, as most of them are closely analagous and can in most instances be considered together.

The first exception is taken to the appellant's offer to prove by a notary public the fact of his having protested for non-payment the negotiable paper of the Surbridge Company, and to prove how much of said paper he had protested and when the same had been done. One of the questions in issue in the cause was the insolvency *vel non* of the company. It has been repeatedly held in this State, and by the Supreme Court of the United States, that a merchant or trader who is unable to pay his debts as they become due in the ordinary course of business, is insolvent, *Castleberg* v. *Wheeler*, 68 Md. 277 ; *Toof* v. *Martin*, 13 Wall. 40 ; and if insolvent, how can the fact be better established than by one who has direct information as to the protest for non-payment of the company's negotiable paper. At common law the notary was a competent witness to establish the fact of the protest for non-payment of such paper. *Cookenderfer* v. *Preston*, 4 How. (U. S.) 317 ; *Johnson* v. *Harth*, 2 Bail (S. C.) 183. There is nothing in the law of this State which affects the notary's status as a witness, although it may have enlarged the scope of his special acts. This proof the appellant should have been permitted to give.

The second exception presents the same question already disposed of in considering the first exception, and in addition thereto the appellant offered to prove the facts set out in the statement of the reporter.

In seeking to establish a right to the possession of the bicycles in controversy, the appellant offers to prove not only that the company was hopelessly insolvent, but that the directors, and especially the appellee, had full knowledge of the exact financial status of the company, and yet, possessed of this information, the directors sold all of the property and effects of the company to Surbridge, after whom the company was named, and who was then a director in and president of the same, on the following terms of sale: Surbridge, the president and director of the concern, was to pay for the stock subscribed or held by the other directors at the rate of twenty per cent. of the par value of the same, by giving his personal notes, which were to be paid in bicycles, to be manufactured out of material bought by the company prior to such sale. That the bicycles manufactured by said Surbridge, as aforesaid, were delivered to the appellee and by him removed during the night-time from the premises of the company, and are the same replevied in this case. It is scarcely necessary to discuss a question of this character, as it speaks for itself, and the proof offered should have been admitted.

We fail to see the importance of the third exception. It is quite immaterial, so far as we can perceive, as to how many hands were working for the company, and we find no error in the ruling of the Court in refusing to allow the question to be asked.

The very gist of this action, as indicated by the appellant's offers of proof, is the fraudulent misconduct of the directors in effecting a sale of the company's effects to one of their own number, by which the rights of its creditors were utterly ignored and sacrificed. In this state of the case it was clearly competent for the appellant to show the actual value of the property sold to Surbridge and replevied in this case, as compared with the amount to be paid by him for the bicycles. This offer constitutes the fourth exception, and we think the testimony was clearly admissible.

The fifth exception is taken to the refusal of the Court to permit the appellant to read to the jury the notes payable in bicycles, which the witness, Schindel, had accepted from Surbridge in payment of his stock in the company. Schindel had previously testified without objection, that he was one of the original incorporators of the company and one of the directors, who, together with others, had participated in the sale of the company's effects and property made to Surbridge, who had paid none of the purchase notes. We think the Court erred in refusing to allow the appellant to read these notes to the jury, for the reason that the controversy with the appellee is but part of a general intrigue to cheat and defraud the creditors of the company, and all of the directors who participated in the consummation of the fraud are in a greater or less degree affected by it. So that, whilst Schindel's notes were unmistakable evidence of his own misconduct, they were more. Taken in connection with the other proof in the record, they clearly demonstrate that they are only integral parts of a common design for wrong doing, in which the appellee is shown to have been an active participant.

It is only necessary to say the sixth, seventh and eighth exceptions should have been overruled. We think the mortgages, judgments and account should have been admitted. The issue here is one of fraud, and the proof offered is clearly applicable to the issue, and on that issue directly depends the right to the possession of the property replevied.

The admissions of the appellant receiver contained in the record do not affect or impair the rights of creditors, whose protection it was his duty to enforce. The assets of the company, insolvent as it manifestly is, must be applied, not to reimburse to directors any losses which they may have sustained, but they must in good faith be applied to the payment of the creditors of the company according to their respective legal rights.

It might as well be said here, at the conclusion of this

somewhat remarkable case, that it matters not how the assets of the company have been concealed, misappropriated or misapplied, it is the duty of the appellant receiver to strike down all disguises and contrivances which ingenuity has suggested, and which have been resorted to for the purpose of depriving the creditors of their legal rights, that the directors might profit thereby. In this case the remedy by action of replevin is appropriate and proper.

The instruction granted by the Court was, we think, erroneous, and should not have been granted. There was sufficient evidence before the jury for the case to have been submitted to them. Our conclusion is that the judgment below must be reversed.

> *Judgment reversed and new trial awarded.*