DAMAZO ET AL. *v.* WAHBY

[No. 273, September Term, 1972.]

*Decided June 6, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*George F. Paxton* for appellants.

*Steven A. Skalet* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case involves a second attempt by Mr. Wahby, a real estate broker, to collect a commission which he earned in June, 1968. This time he was successful in the lower court, and we shall affirm that court's order, at least in part.

Wahby was found to have procured a purchaser for Edwards Way, an apartment complex owned by Willowbrook Development Company, Inc. (Willowbrook), a company owned by David S. Damazo and his wife Lillian. The sale price was $950,000.00, on which Wahby claimed a commission of 5%, or $47,500.00. In the earlier case, *Damazo v. Wahby*, 259 Md. 627, 270 A. 2d 814 (1970), an appeal from a judgment in that amount entered against Willowbrook and Mr. Damazo, Willowbrook's controlling stockholder, we remanded the case, without affirmance or reversal, because we found that the entry of judgment against Damazo personally was impermissible, since the contract and therefore the liability under it was Willowbrook's.

In the course of our opinion in *Damazo v. Wahby*, at 259 Md. 635, we forecast the present litigation:

> "Recognition that the corporate identities must be honored will not necessarily prevent Wahby and Fliegel [Fliegel Properties Management, Inc., a real estate firm which claimed a commission on the sale of another property] from pursuing any assets, including the notes secured by the second deeds of trust, which went from the corporations to Damazo and his wife. The *bona fides* and effectiveness of the assignments of corporate assets to stockholders may be inquired into and resolved in favor of creditors of the corporation if the assignments were fraudulent as to the creditors or if their equities are superior to those of the stockholders."

On remand, Wahby's judgment of 26 February 1970 for $47,500.00 against Willowbrook was permitted to stand. Thereafter, on 4 March 1971, Wahby brought suit in the Circuit Court for Montgomery County against Willowbrook, Damazo, and Damazo's wife, in which he sought to set aside, as a fraudulent conveyance, the transfer by Willowbrook to the Damazos of the note of Coronado-Adelphi, Inc. for $193,535.09, secured by a second deed of trust on Edwards Way. This note was part of the consideration paid by Coronado-Adelphi to Willowbrook on 17 June 1968. Wahby alleged that the transfer of this note, made in July of 1968, shortly after the sale, to David and Lillian Damazo, the sole stockholders of Willowbrook, had been made without consideration, and had rendered Willowbrook insolvent.

From a decree entering judgment in favor of Wahby against the Damazos for $47,500.00 with interest from 17 July 1968, the Damazos have appealed. We propose to modify the decree to the end that interest will be allowed only from 26 February 1970, the date of the judgment against Willowbrook, because that judgment allowed no interest prior to its entry. As so modified we shall affirm the lower court's decree.

The Damazos attack the decree entered below on four grounds:

   (i) Because necessary parties were not joined as defendants;

  (ii) Because a personal judgment for money cannot be entered in a suit to set aside a fraudulent conveyance;

 (iii) Because the transfer of the note did not render Willowbrook insolvent; and,

 (iv) Because the note was not transferred without consideration.

We shall deal with these contentions in order.

(i)

Were Dasa Investments, Inc. and Security National Bank necessary parties to this suit?

The testimony revealed that Willowbrook had transferred the note to the Damazos in early July, 1968, shortly after the sale of Edwards Way. The Damazos then transferred the note to Dasa Investments, Inc. (Dasa), another corporation controlled by the Damazos. Dasa, in turn, pledged the note to Security National Bank as collateral for a loan. The Damazos make much of the fact that the court could not proceed without having Dasa and Security National Bank before it as parties.

The short answer to this contention is that the Damazos would be right if satisfaction of his judgment from the note had been the only relief which Wahby had prayed. This, however, was not the case, since he sought alternatively the return of the note or a judgment in personam against the Damazos. Wahby is quite correct when he says that a third person through whom a fraudulent conveyance passes, who does not participate in the fraud is not a necessary party to a fraudulent conveyance action, relying on *Walter v. Riehl,* 38 Md. 211, 219-21 (1873), even though he may be a proper party, *Atlantic Lumber Corp. v. Waxman,* 162 Md. 191, 197, 159 A. 593 (1932). Nor do we regard an innocent party who is the ultimate recipient of the subject of the fraudulent conveyance as a necessary party if no effort is made to satisfy the creditor's claim from that which the innocent

recipient holds. *See* Annot., *Necessary Parties Defendant to Action to Set Aside Conveyance in Fraud of Creditors,* 24 A.L.R.2d 395, §§ 17, 18 at 424, 428 (1952); 37 Am. Jur. 2d, *Fraudulent Conveyances* § 202 at 861-62 (1968).

(ii)

May an in personam judgment be entered in a suit to set aside a fraudulent conveyance?

While the Maryland law on this subject is not as unequivocal as one might hope, the logic of the authorities is unassailable. Obviously, if the subject of the fraudulent conveyance has been disposed of or cannot be reached, the person defrauded should be able to recover from the person to whom the transfer was wrongfully made, and through whose hands it passed, *Aggregates Associated, Inc. v. Packwood,* 58 Cal. 2d 580, 375 P. 2d 425, 431, 25 Cal. Reptr. 545 (1962); *Leachman v. Cobb Development Co.,* 226 Ga. 103, 172 S.E.2d 688, 690 (1970); *Vinlis Construction Co. v. Roreck,* 67 Misc. 2d 942, 325 N.Y.S.2d 457, 463 (Sup. Ct. 1971); 37 Am. Jur. 2d, *Fraudulent Conveyances, supra,* §§ 124, 157 at 803, 827; Glenn, *Fraudulent Conveyances* § 57 at 77, § 239 at 413 (1940). Peripheral support for these general principles may be found in *Riverside Brick Co. v. Wheatley,* 92 Md. 410, 412, 48 A. 715 (1901) and in *Chatterton v. Mason,* 86 Md. 236, 247, 37 A. 960 (1897) which vacated in personam decrees because they had not been sought in the complaint. *See also Folsom v. Detrick Fertilizer & Chemical Co.,* 85 Md. 52, 36 A. 446 (1897); *Mish v. Main,* 81 Md. 36, 31 A. 799 (1895) and *Goodman v. Wineland,* 61 Md. 449, 452 (1884). Moreover, it should be remembered that the Legislature, in enacting the Uniform Fraudulent Conveyance Act, Maryland Code (1957, 1971 Repl. Vol.) Art. 39B, was enacting a statute declaratory of the common law,[1] *Atlantic Lumber Corp. v. Waxman, supra,* 162 Md. at 195, and was not restricting the legal or equitable remedies already available to a creditor, Art. 39B, § 11; *Lipskey v. Voloshen,* 155 Md. 139, 144-45, 141 A. 402

---

1. And of the English statute, 13 Elizabeth, Ch. 5 enacted by Parliament in 1570.

(1928). The Act "simply adds an efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment. * * * [T]he underlying objective of the uniform act . . . is to enhance and not impair the remedies of the creditor." *Lind v. O. N. Johnson Co.*, 204 Minn. 30, 282 N. W. 661, 667, 668, 119 A.L.R. 940 (1938); *see* Glenn, *Fraudulent Conveyances, supra,* § 62 at 101.

Interestingly enough, the innovative impact of the Act in other jurisdictions where for the first time a creditor could file his bill of complaint without having reduced his claim to judgment, was not a novel idea in Maryland, where this had been the law since the passage of Ch. 380, § 2 of the Laws of 1835, Code (1957) Art. 16, § 39; Miller, *Equity Procedure* §§ 730-732, at 832-34 (1897). This provision was not repealed by the Uniform Act and subsisted until 1962 when it was supplanted by Maryland Rule X70, to the same effect.

We are simply not impressed by the Damazos' argument that the entry of an in personam judgment is not within the contemplation of the Uniform Fraudulent Conveyance Act, merely because Art. 39B, § 9 offers the alternative of setting aside the conveyance or executing upon the property conveyed.

The better rule would seem to be that so long as the property remains in the possession of the fraudulent transferee, who does nothing to lessen its value, a judgment in personam will not be entered. But where the transferee allows or causes the property to depreciate in value or parts with the property without sufficient consideration or puts it beyond the reach of the court, equity will not allow itself to be frustrated but will adapt its relief to the exigencies of the case and will enter a money judgment if this will achieve an equitable result. The form of the relief should be so framed as "to place the judgment creditor in the same or similar position he held with respect to the fraudulent transferor prior to the fraudulent conveyance," *Miller v. Kaiser,* 164 Colo. 206, 433 P. 2d 772, 775 (1967). *Compare Miller v. Kaiser, supra,* at 775-76 and *United Shoe Machinery Corp. v. Becker,* 51 F. Supp. 802 (D.C. N. Y. 1943) *with North River Mortg. Corp. v. Jacob,* 144 Misc. 842, 259 N.Y.S. 603 (1932) and *see* 2

Moore, *Fraudulent Conveyances* Ch. XIX, § 8 at 1023 (1908) and cases collected in Footnotes 66 and 67.

Particularly apposite here is an excerpt from McLaughlin, *Application of the Uniform Fraudulent Conveyance Act*, 46 Harv. L. Rev. 404, 443 (1933):

> "On general equitable principles, have not the creditors of the grantor an equity in the property in the hands of the fraudulent grantee? And if he dissipates the property, cannot they hold him accountable? And if so, is the operation of such a principle precluded by section 9 of the Uniform Act which specifies the two usual remedies of creditors, or admitted under section 11 as a case not provided for in the Act? A possible construction is that the maxim *expressio unius, exclusio alterius* applies to section 9 [a construction which the Damazos earnestly espouse]. But a preferable construction is that the creditor's right to avoid, like an equity of rescission in a defrauded transferor, carries with it a remedy against the transferee on a theory of constructive trust. The New York Appellate Division [in *Halsey v. Winant*, 233 App. Div. 103, 251 N.Y.S. 81 (1931); *rev'd* on other grounds, 258 N.Y. 512, 180 N.E. 253 (1932); *cert. denied*, 287 U.S. 620, 77 L. Ed. 539, 53 S. Ct. 20 (1932)] has granted the relief in question without adverting to the possible restrictive effect of section 9."

(iii)

Did the transfer of the note render Willowbrook insolvent?

The Damazos challenge the lower court's conclusion that Willowbrook was rendered insolvent by the transfer of the note.

Code Art. 39B, § 4 provides:

> "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors

without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The court found as a fact that the note was transferred by Willowbrook to the Damazos after 1 July 1968, but before 18 July 1968. On 1 July, Willowbrook had transferred to LeKar Properties, Inc., another of Mr. Damazo's corporations, 16 lots apparently worth $152,000.00. Since the lots were Willowbrook's only asset other than the note for $193,535.09, once the lots had been transferred, Willowbrook's balance sheet would have looked somewhat like this:

| _Assets_ | | _Liabilities_ | |
|---|---|---|---|
| Note | $193,535.09 | Mortgage debt | $ 85,600.00 |
| | | Accounts payable | 164,680.00 |
| | | Brokerage commission payable (Wahby) | 47,500.00 |
| | | Loans payable (Damazos) | 77,000.00 |
| Total Assets | $193,535.09 | Total Liabilities | $374,780.00 |

It is clear that Willowbrook's liabilities exceeded its assets after 1 July 1968 by $181,244.91. Even if Wahby's commission is not taken into account, which the Damazos urge, on the theory that there was no proof that demand had been made, liabilities still exceeded assets. If the note, as Damazo contends, was not worth its face amount, say only $40,000.00 or $45,000.00, the situation becomes worse.[2] Once the note was transferred, Willowbrook's assets entirely disappeared, leaving it with liabilities only. It is obvious under these facts, that there could be no error in a finding that Willowbrook was made insolvent by the transfer of the note. The chancellor could also have found that Willowbrook was insolvent _before_ the transfer.

---

2. The note was subsequently pledged to Security National Bank to secure a loan of $125,000.00.

(iv)

Was the note transferred without consideration?

The Damazos argue that the note was transferred by Willowbrook to them in satisfaction of the loans of $77,000.00 which they had made to Willowbrook and in return for their assumption of $122,827.41 of Willowbrook's accounts payable. Here, the chancellor found that all but $995.00 of the $122,827.41 were amounts owed not by Willowbrook, but by the Damazos, *see Berger v. Hi-Gear Tire & Auto Supply, Inc.*, 257 Md. 470, 263 A. 2d 507 (1970). We have reviewed the testimony and conclude that there is ample support for this conclusion, which we shall not disturb, Maryland Rule 886.

In *Lacey v. Van Royen*, 259 Md. 80, 94, 267 A. 2d 91 (1970), we quoted with approval 37 Am. Jur. 2d, *Fraudulent Conveyances*, § 218 at 875:

> "Where a conveyance is sought to be vacated on the ground that it was voluntary, the burden is upon the complainant to show that his debt antedated the conveyance attacked, but the burden of proving the solvency of the debtor, that is, that he retained sufficient means to pay his debts after the voluntary conveyance, is on the transferee."

The Damazos did not meet this burden by a country mile.

For the reasons stated, we shall modify the decree in order that the judgment in Wahby's favor against the Damazos shall be for $47,500.00 with 6% interest from 26 February 1970 and costs.

*Decree modified, and as modified affirmed; costs to be paid by appellants.*