STAPLETON, Circuit Judge.
Concurring in part, dissenting in part.
Although the district court’s view of the events giving rise to this litigation does not explain to my satisfaction the motivation of the bank in acting contrary to its apparent self-interest, I would affirm as not clearly erroneous the district court’s conclusion that Paige transferred its assets for inadequate consideration and with fraudulent intent. I also agree with that portion of this court’s opinion which reverses paragraph three of the district court’s judgment. I respectfully dissent from section VII of the court’s opinion, however, because the remedy ordered by the district court in paragraph two of the judgment, like that contained in paragraph three, leaves the unsecured creditors of Paige in a better position than they would have been in had there been no fraudulent conveyance.[1]
I.
Section 9 of the Uniform Fraudulent Conveyance Act, in force in Pennsylvania by virtue of 39 Pa.Stat. § 359 and, at relevant times,[2] in New Jersey by virtue of N.J.Stat. § 25:2-15, provides that one in VATCO’s position is entitled to have the fraudulent “conveyance set aside” or to “disregard the conveyance and attack or levy execution upon the property conveyed.” These remedies are designed to place a creditor in the same position it was in prior to the fraudulent conveyance.
*224 The remedies provided by the Act are not generally regarded as exclusive and under appropriate circumstances, other relief may be granted. There is, for example, authority supporting the proposition that under Pennsylvania law a damage judgment could properly be entered against the transferee of a fraudulent conveyance if it has dissipated the property conveyed or placed it beyond the reach of the court. In Re Penn. Packing Co., 42 B.R. 502 (Bkrtcy E.D.Pa.1984). Nevertheless, I believe that such alternative remedies can only be “so framed as to place the ... creditor in the same or a similar position he held with respect to the fraudulent transferor prior to the fraudulent conveyance.” Id. at 507 n. 5 (quoting Damazo v. Wahby, 305 A.2d 138, 269 Md. 252 (1973)).
Accordingly, it is helpful at the outset to consider the position of VATCO and Paige’s other unsecured creditors before the fraudulent conveyance and the position they would have been in if Paige had received fair consideration for its assets. To do so, we employ the district court’s valuation figures. Prior to the disputed transaction, Paige had assets valued at approximately $1.7 million. Those assets secured $1.5 million worth of loans from the New Jersey National Bank (“NJNB”). In addition, Paige had unsecured creditors with claims totaling approximately $800,000. VATCO’s claim represented slightly more than half that amount.
If Paige had sold its assets in good faith and for a fair consideration, the first $1.5 million received from such sales would have gone to satisfy NJNB’s secured claims. That would have left a maximum of $200,000 from which the unsecured creditors could satisfy their $800,000 worth of claims.[3] Paige’s unsecured creditors would not have had access to the additional $150,-000 in new funds supplied by the Stablers and Steinberg to capitalize Vantage any more than they would have had access to the Bank’s guarantees from the Stablers.
While I realize there are suggestions in the district court opinion that Paige’s assets may have had a value in excess of $1,700,000, the crucial facts for our purposes are that (1) the district court made no finding that VATCO and the unsecured creditors would have had an amount in excess of that figure to share after the bank’s lien was satisfied and (2) the record would not have supported such a finding.
In paragraph two of the judgment, the district court imposed a “constructive trust” on the Stablers’ interest in the common stock of Vantage in favor of the unsecured creditors of Paige. This was considered appropriate because Vantage purchased Paige’s inventory at half price. The constructive trust imposed, however, was not on the Paige inventory, proceeds of the Paige inventory, or any other property traceable to that inventory or those proceeds. The constructive trust thus does not perform the same function here as it ordinarily does in this context — that of undoing or reversing the effects of the fraudulent conveyance.
Since Vantage is now in bankruptcy, it is, of course, unlikely that the unsecured creditors of Paige will realize anything from this “constructive trust.” In any situation in which that trust would be meaningful to them, however, the value of the Vantage stock would reflect not only the $200,000 of which Paige’s unsecured creditors were wrongly deprived, but the additional capital infusion provided during the formation of Vantage and possibly other elements of value in which Paige’s unsecured creditors would have no legitimate interest.
I do not think that paragraph two of the judgment can be justified, as the court suggests, on a tort or breach of fiduciary duty theory. Whatever the theory, Paige’s unsecured creditors can recover from the Stablers only their own damages proximately related to the fraudulent conveyance. Moreover, while it is conceivable *225 that the district court might have been able to render a money judgment against the Stablers that would provide a basis for executing on their interest in Vantage, that is not what the district court did. Nor did the district court find that the Stablers had been unjustly enriched at the expense of the unsecured creditors to the full extent of the value of their interest in Vantage.
I would reverse paragraph two of the district court’s judgment as well as paragraph three.

. I do not understand the appellants to challenge paragraph one of the judgment other than on the ground that the district court erred in finding inadequate consideration, fraudulent intent, and prejudice to VATCO.

. New Jersey adopted the Uniform Fraudulent Transfer Act effective January 1, 1989.

. In reality this overstates the amount that would have been available to the unsecured creditors. The hypothetical sale of assets would have created expenses that would have been paid before either the bank’s or the unsecured creditors’ claims were satisfied. Similarly, if Paige had defaulted and NJNB had disposed of the collateral pursuant to 13 Pa.C.S.A. § 9504, the proceeds first would have been applied to the expenses of the sale.