IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1913.

FECHEIMER-KEIFER Co. *v.* BURTON.

(*Nashville*, December Term, 1913.)

FRAUDULENT CONVEYANCES. Bulk sales. Validity. Remedy of creditors of seller.

Where a retail merchant sold his stock in bulk without compliance with the Bulk Sales Act (Acts 1901, ch. 133), both parties being without actual intent to defraud, and paid over the proceeds to a part of his creditors, the sale was not absolutely void, so as to entitle an unpaid creditor to recover the value of the entire stock; but, the buyer being entitled to be subrogated to the claims of the creditors paid with its money, the plaintiff creditor could only recover the *pro rata* share of such value which was distributable to him. (*Post, p.* 684.)

Acts cited and approved: Acts 1901, ch. 133; Acts 1903, p. 92.

Code cited and construed: Civil Code 1895, sec. 2697.

(682)

Fecheimer-Keifer Co. v. Burton.

Cases cited and approved:   Daly v. Drug Co., 127 Tenn., 412;
  Adams v. Young, 200 Mass., 588; Loos v. Wilkinson, 113 N. Y.,
  485; Algood v. Connell, 35 Tenn., 578; Neas v. Borches, 109
  Tenn., 398; Gallus v. Elmer, 193 Mass., 106; Robinson v. Stew-
  art, 10 N. Y., 189, 196; Kohn v. Fishback, 36 Wash., 69; Appel
  Mercantile Co. v. Barker, 92 Neb., 669; Guaranty, etc., Co. v.
  Pearlman (D. C.), 144 Fed., 550, contra National Gro. Co. v.
  Plotter, 167 Mich., 626; Chatterton v. Mason, 86 Md., 236;
  American Bonding Co. v. National, etc., Bank, 99 Am. St. Rep.,
  480, notes; Knafle v. Banking & Trust Co., 128 Tenn., ——.
Cases cited and distinguished:   Sampson v. Brandon Grocery Co.,
  127 Ga., 454; Fitz Henry v. Munter, 33 Wash., 629.

---

FROM PUTNAM.

---

Appeal from Chancery Circuit Court of Putnam
County, to the Court of Civil Appeals and by *certiorari*
from the Court of Civil Appeals to the Supreme
Court.—A. H. Roberts, Chancellor.

B. G. Adcock and W. Bryant, for complainant.

E. D. White, for defendant Burton.

Mr. Justice Williams delivered the opinion of the
Court.

The bill was filed by complainants, wholesale mer-
chants, to hold liable defendants Cooper & Brown as
the purchasers of a stock of goods from defendant
Burton, a retail merchant, in violation of the Bulk
Sales Act (Acts 1901, ch. 133).

The value of the stock sold in bulk, without compliance with the statute's provisions, was $924.85, and that sum was paid in notes by the vendees, Cooper & Brown. Both parties were without intent to defraud, and fraud in fact is thus negatived.

Two of the three notes of Cooper & Brown were turned over to a brother of the vendor. on the day of sale, and on realization he paid the proceeds to *bona fide* creditors of D. L. Burton. A third purchase money note executed by the vendee firm was transferred to this brother in his own right, he being a creditor of the vendor.

The chancellor and the court of civil appeals held that, as the entire sum received for the stock of goods had been expended in the payment of this indebtedness of the vendor, D. L. Burton, complainants were without remedy, although they received no part of the consideration sum.

It seems clear, since the sale was only fraudulent in law (*Daly* v. *Drug Co.*, 127 Tenn., 412, 424, 155 S. W., 167), that the purchasers are entitled to stand in the place of the creditors whose demands against their vendor were thus paid by the purchase money notes, or the proceeds thereof. Those whose purchase of property has been under such a statute denounced as constructively fraudulent, and avoided by creditors of the seller, may stand in the place of other creditors whose demands have been thus paid. This was held in *Adams* v. *Young*, 200 Mass., 588, 86 N. E., 942, a case involving a sale in violation of the Massachu-

setts Bulk Sale Act. *Loos* v. *Wilkinson,* 113 N. Y., 485,
21 N. E., 392, 4 L. R. A., 353, 10 Am. St. Rep., 495;
*Alley* v. *Connell,* 3 Head, 578.

But does it follow that the purchasers may pay, or
cause to be paid, one or more of the unsecured credi-
tors of their vendor in full, and leave the other credi-
tors of the same grade wholly unpaid, and successfully
withstand a complaint by the latter?

The recoveries of all of the creditors of the seller
cannot exceed, in the aggregate, the true value of the
property fraudulently passed to the purchasers, and
therefore converted.

May the entire purchase price be paid by the pur-
chaser to one creditor, leaving the others remediless,
where that price was the value of the stock of goods
converted?

If this may be done, it would seem that a single
creditor, holding a demand against the seller equal in
amount to the value of the stock of goods on hand,
could purchase that stock without complying with the
terms of the act, or contravening its provisions. In
the case of *Neas* v. *Borches,* 109 Tenn., 398, 71 S. W.,
50, 97 Am. St. Rep., 851, the purchaser was a creditor
of the seller, but that fact was not remarked on for
differentiation to save the sale there involved, which
was held to be fraudulent.

In *Sampson* v. *Brandon Grocery Co.,* 127 Ga., 454,
56 S. E., 488, 9 Ann. Cas., 331, it was said:

"The question presented by this record is whether
a sale of a stock of goods in bulk by a debtor to his

creditor, in partial payment or entire extinguishment of his debt, is valid, unless the sale is made agreeably to the terms of the act approved August 17, 1903 [Acts 1903, p. 92]. . . . The salutory object would not be attained if sales by the debtor to the creditor in the extinguishment of his debt were excepted. . . .

"But it is contended that if the act of 1903 be applied to a sale of a stock of goods in bulk by a debtor to his creditor, so much of Civ. Code [1895], sec. 2697, as permits a debtor to prefer a creditor by a sale without reservation of any benefit will be impliedly repealed. It is a well-recognized canon of statutory construction that a subsequent statute will not repeal a former if the two can be reconciled. Construing the act of 1903 and section 2697 together, we may easily reach the conclusion that sales of stock in bulk by a debtor to a creditor, in extinguishment of his debt, in whole or in part, are still permissible, but that such sales are null and void unless there be compliance with the terms of the act of 1903."

The same rule as to a creditor purchaser was announced in *Gallus* v. *Elmer,* 193 Mass., 106, 78 N. E., 772, 8 Ann. Cas., 1067, and assumed in the decision of other cases cited in note, 9 Ann. Cas., 332.

Both phases of the above decision by the Georgia court are approved by us as sound, when application is made of its principles to our Bulk Sales Act and our law touching the right of an insolvent debtor to prefer a creditor. If the preference may not be made directly by way of a bulk sale to the creditor, it would

seem that the preference of one, with consequent exclusion of other, creditors, cannot be reached by indirection in the manner presented on this record.

The true theory appears to us to be that declared by the supreme court of Washington, in *Fitz Henry* v. *Munter,* 33 Wash., 629, 74 Pac., 1003, where, in speaking of a like act, it was said:

"The object of this law was to hold the goods of debtors under such circumstances as a trust fund for the benefit of all creditors, and to hold the purchaser in possession as a trustee for such creditors. This being so, the cause will have to be reversed, with instruction to distribute the funds pro rata to all of the creditors who are parties to the suit."

See, also, *Kohn* v. *Fishback,* 36 Wash., 69, 78 Pac., 199, 104 Am. St. Rep., 941; *Appel Mercantile Co.* v. *Barker,* 92 Neb., 669, 675, 138 N. W., 1133; *Guaranty, etc., Co.* v. *Pearlman* (D. C.), 144 Fed., 550. But see, seemingly *contra, National Grocer Co.* v. *Plotler,* 167 Mich., 626, 133 N. W., 493.

In *Gallus* v. *Elmer,* supra, the Massachusetts court said, in reference to such a statute, that it was its purpose to prevent alienation by a merchant of his stock of goods "away from his creditors *in general.*" A prime purpose of the statute was to prevent preferences of creditors by and through bulk sales.

Any other view and ruling would render the act the easy instrument of inequality and injustice, if not of frauds differing only in kind from those it was meant to prevent.

The rule of distribution *pari passu* to creditors of the grantor has been applied, and justly, in cases involving subrogation, where the conveyance was fraudulent under test of common law principles, and where no lien had been fixed by one or more of them. *Robinson* v. *Stewart*, 10 N. Y., 189, 196; *Chatterton* v. *Mason*, 86 Md., 236, 37 Atl., 960.

Since subrogation is a remedy invented by courts of equity, they will move to administer it where the result will be an equitable one, but not to work injustice to another in the defeat of an equal equity. *American Bonding Co.* v. *National, etc., Bank*, 99 Am. St. Rep., 480, notes; *Knaffle* v. *Banking & Trust Co.*, 128 Tenn. —, 159 S. W., 838.

The right of the defendant purchasers, in this case in equity, therefore, was to be subrogated to the rights of the creditors, paid by the proceeds of sale, to a *pro rata* share of the value of the stock of goods.

Complainants' rights are, by parity of reasoning, not to a recovery in full, as contended by them, but to a recovery from appellee firm of the *pro rata* distributable to them.

Writ of *certiorari* granted complainants; reversed, with remand for further proceedings not inconsistent with what is herein ruled.