C. J. ELLEDGE *v.* BEULAH S. ANDERSON *et al.*

(*Nashville.*  December Term, 1915.)

1. **FRAUDULENT CONVEYANCES. Partial validity of transaction. Right of grantee. Resulting trusts.**

Complainant purchased a one-half interest in a stock of goods in violation of the Bulk Sales Law (Laws 1901, ch. 133). Thereafter the seller having died, he acquired the remaining one-half interest on the understanding that creditors' liens should be discharged by the administrator and the seller's widow. The money paid for the second interest could be identified in a bank. *Held* that, as the seller's creditors could have followed the money, and as the whole of the stock was liable for their demands, complainant, who had paid the demands of creditors, was entitled to impress a trust upon such funds, notwithstanding the seller's widow at the time of the sale was mentally incompetent. (*Post, pp.* 481–483.)

Acts cited and construed:   Acts 1901, ch. 133.

Cases cited and approved:   Daly   v. Drug Co., 127 Tenn., 412; Adams v. Young, 200 Mass., 588; Loos v. Wilkinson, 113 N. Y., 485; Alley v. Connell, 40 Tenn., 578.

Case cited and distinguished:   Fecheimer-Keiffer Co. v. Burton, 128 Tenn., 682-684.

2. **EQUITY.  Bill.  Sufficiency.**

Where a bill set out the facts showing complainant to be entitled to relief, and concluded with a general prayer, it is sufficient, though not in so many words stating the theory upon which complainant was entitled to relief. (*Post, p.* 483.)

---

FROM GILES

---

Appeal from the Chancery Court of Giles County— WALTER S. BEARDEN, Chancellor.

*On the question of remedy of creditors where sale is made in violation of bulk sales law, see note in 39 L. R. A. (N. S.), 374.

BEN CHILDERS, for appellants.

J. B. WOODWARD, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court..

This bill was filed to reach $1,365.83 in a Pulaski bank, claimed by Mrs. Beulah S. Anderson, widow of Ed. F. Anderson. A demurrer was interposed and overruled, and defendants appealed to this court.

The controversy arises in the following manner:

In May, 1910 Ed. F. Anderson, the husband of the defendant, was the owner of a drug store in Pulaski, and on that date he sold a one-half interest therein to the complainant, Elledge, for $4,000.

Anderson was considerably indebted to mercantile creditors. Of this fact Elledge was unaware; Anderson telling him that the debts amounted to little and promising Elledge to take care of them. No attempt was made by the parties to comply with the provisions of the Bulk Sales Law (chapter 133, Acts of 1901). Neither of them knew of the existence of this statute at the time of the transaction.

After this sale Anderson's creditors brought suits against Elledge to hold him liable to the amount of the value of the stock purchased by him. The suits were founded on the statute referred to. This court held Elledge to be liable to such creditors to the extent of the interest acquired by him in the stock of goods, holding that his purchase of a one-half interest therein was in violation of chapter 133, Acts of 1901. *Daly* v.

*Drug Co.,* 127 Tenn., 412, 155 S. W., 167, Ann. Cas., 1914B, 1101.

In May, 1911, about a year after Elledge had bought this interest in the business, Anderson died. At that time one of Anderson's creditors had recovered judgment against Elledge, and others had sued or were threatening to sue him.

Under these circumstances Elledge made a trade with the administrator of Anderson's estate whereby Elledge acquired the other one-half interest in the business for $2,750, and as a part of this trade Anderson's administrator and the defendant Mrs. Beulah S. Anderson, the widow, undertook to protect Elledge from further liability on account of Anderson's debts.

The administrator paid off the creditor who had obtained the judgment against Elledge, but later other creditors appeared and brought suits, and, when Elledge sought to hold Mrs. Anderson and the administrator on their aforesaid guaranty, it developed that Mrs. Anderson was of unsound mind and incapable of making a binding contract at the time she signed the paper aforesaid. Elledge brought two suits to hold her liable, and in both of them she was adjudged to have been mentally incapacitated to enter into this contract.

It is conceded that Elledge knew nothing of this condition of her mind when he made such contract.

The $1,365.83 sought to be reached in this suit is the balance of the sum of money paid to Anderson's administrator by Elledge for Anderson's remaining interest in the stock. There is no question as to the identity of the fund.

It appears that the administrator personally is insolvent.   Nothing can be realized from him by Elledge.

Mrs. Anderson claims the $1,365.83 as her year's support, and insists by her next friend in this case that she is entitled to this sum for this purpose free from the claims of any creditor of her late husband, including the claim of Elledge.

We think the chancellor's decree was correct, and that complainant, Elledge, is entitled to reach this fund.   It appears that, notwithstanding the guaranty of protection made to him by the administrator and Mrs. Anderson at the time he purchased Anderson's remaining one-half interest in the firm, Elledge has been sued by Anderson's creditors and has paid more than $3,500 in judgments against himself on this account.

Anderson and Elledge violated the Bulk Sales Law by the original deal in which Elledge acquired a one-half interest in the stock in 1910.   This transaction was declared constructively fraudulent in *Daly* v. *Drug Company*, 127 Tenn., 412, 155 S. W., 167, Ann. Cas., 1914B, 1101.

Thereafter the entire stock was subject to the demands of these creditors of Anderson's.   Elledge was personally liable to the extent of the interest which he had acquired, but all of the stock of goods was liable for Anderson's debts, and subject to attachment.

When Elledge purchased Anderson's interest, thus incumbered, from his administrator, he did so with the understanding that the creditors' lien was to be dis--

charged by the administrator and Mrs. Anderson. El-
ledge's money really went into the administrator's
hands impressed with a trust for the payment of An-
derson's creditors. The creditors could undoubtedly
have followed this fund.

In *Fecheimer-Keiffer Co.* v. *Burton,* 128 Tenn., 682,
684, 164 S. W., 1179, 51 L. R. A. (N. S.), 343, consider-
ing a sale had in violation of the Act of 1901, it was
said:

"It seems clear, since the sale was only fraudulent
in law, . . . that the purchasers are entitled to
stand in the place of the creditors whose demands
against their vendor were thus paid by the purchase
money notes, or the proceeds thereof. Those whose
purchase of property has been under such a statute
denounced as constructively fraudulent, and avoided
by creditors of the seller, may stand in the place of
other creditors whose demands have been thus paid."

For this the court cited *Adams* v. *Young,* 200 Mass.,
588, 86 N. E., 942, *Loos* v. *Wilkinson,* 113 N. Y., 485, 21
N. E., 392, 4 L. R. A., 353, 10 Am. St. Rep., 495, and
*Alley* v. *Connell,* 40 Tenn. (3 Head), 578, which author-
ities fully sustain the proposition.

As we have pointed out, Elledge paid off Anderson's
creditors to the extent of $3,500, and under the au-
thorities above he became subrogated to the rights of
these creditors against Anderson's interest in the
stock of goods. These creditors had a lien as a result
of the statute, on Anderson's interest and Elledge's
interest—the entire stock. When Anderson paid them

he acquired their lien, including their lien on Anderson's interest.

What, then, became of Anderson's interest? Where was it? It was represented by the fund Elledge had paid to the Administrator.   This payment was made on the faith of the bond executed by the administrator and by Mrs. Anderson that they would save Elledge harmless from the demands of Anderson's creditors.

Said sum of money so paid by Elledge, being the proceeds of property charged by the statute with a trust in favor of Anderson's creditors, could have been followed and subjected by the creditors in the administrator's hands.   When Elledge paid the creditors he became subrogated to this right of theirs.   He has traced part of the fund and found it in a Pulaski Bank, and we think he is entitled to hold it.

The entire theory of the defendant rests on the idea that Elledge was merely a general creditor of Anderson as to the sums in which he was mulcted for Anderson's mercantile debts, and it is accordingly urged his claim could not have priority over the widow's claim for a year's support.   The argument for the widow entirely overlooks the right of Elledge to be substituted to the rights and remedies  of the creditors paid by him, and is for this reason unsound.

Complainant's bill states the facts fully.   While it does not in so many words present the theory upon which we have concluded the bill should be maintained, under the prayer for general relief the court thinks it proper to sustain the bill for the reasons herein stated.

Decree of the chancellor affirmed with costs.