C. J. ELLEDGE *v.* LULA M. SUMPTER *et al.*

(*Nashville.* December Term, 1917.)

1. **FRAUDULENT CONVEYANCES.** Accounting by innocent transferee.

Upon accounting to a creditor by a wife as innocent transferee of shares of stock fraudulently transferred by her deceased husband, for the value of the shares, where it appeared that notes of the husband were during his life-time secured by assignment and pledge by the husband and wife of a policy on the husband's life in which the wife was beneficiary, and no right was reserved to the husband to change the beneficiary, and the notes were satisfied from the proceeds of the policy after the husband's death, the wife was entitled to credit for such payment, it being in contemplation of law made by her, since she was the efficient and real assignor and pledgor of the policy. (*Post, pp.* 14, 15.)

Acts cited and construed:   Acts 1901, ch. 133.

Cases cited and approved:   Daly v. Sumpter Drug Co., 127 Tenn., 412;   Elledge v. Anderson, 133 Tenn., 478;   Scobey v. Waters, 78 Tenn., 551;   Gosling v. Caldwell, 69 Tenn., 454;   Marquet v. Insurance Co., 128 Tenn., 213;   Holden v. Stratton, 198 U. S., 202.

2. **BANKRUPTCY.** Exemptions. Insurance policies.

Under Bankruptcy Act July 1, 1898, chapter 541, section 70a, 30 Stat. 565 (U. S. Comp. St. 1916, section 9654), insurance policies, exempt by the laws of the State, do not pass to the trustee in bankruptcy. (*Post, pp.* 14, 15.)

3. **FRAUDULENT CONVEYANCES.** Pledged property. Payment by innocent transferee. Rights.

When personal property pledged to secure payment of a valid debt is fraudulently transferred, creditors are not, upon setting aside the transfer, entitled to recover from an innocent transferee the full value of the pledged property, but only its value

after deducting the amount of the debt secured. (*Post, pp.* 15, 16.)

Cases cited and approved: Hamilton Nat. Bank v. Halsted, 134 N. Y., 520; Loos v. Wilkinson, 113 N. Y., 485.

4. **SUBROGATION. Payment of creditors after notice. Rights of innocent transferee.**

Where innocent transferee in fraudulent conveyance pays unsecured creditors after notice that the transfer was a fraud on creditors, he is entitled to be subrogated to the rights of such creditors on a *pro rata* basis, whether formally assigned to him or not. (*Post, pp.* 16-18.)

Cases cited and approved: Cottingham v. Greeley Branham Groc. Co., 129 Ala., 200; Fecheimer-Keifer Co. v. Burton, 128 Tenn., 682; Robinson v. Stewart, 10 N. Y., 189; Kehr v. Smith, 20 Wall. (U. S.), 36; Chatterton v. Mason, 86 Md., 236.

Case cited and distinguished: Adams v. Young, 200 Mass., 588.

5. **SUBROGATION. When granted. Application. Equal equities.**

Subrogation will be granted or a charge enforced in a court of equity only where an equitable result would be reached, but not to work injustice to another in the defeat of an equal equity. (*Post, p.* 18.)

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—JOSEPH R. WEST, Special Chancellor.

WOODWARD & BERRY and FITZGERALD HALL, for appellant.

SMITH & BERRY, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This suit is the third that has been before this court arising out of the transaction first treated of in *Daly* v. *Sumpter Drug Co.,* 127 Tenn., 412, 155 S. W., 167, Ann. Cas., 1914B, 1101; the second phase being disposed of in *Elledge* v. *Anderson,* 133 Tenn. 478, 182 S. W., 234.

J. Rhea Sumpter as the administrator of Ed. F. Anderson sold the second one-half interest in a drug store of Anderson to Elledge, and in the contract of sale bound himself individually to hold Elledge harmless as to all indebtedness of the concern due to creditors who might proceed against Elledge on the ground that the Bulk Sales Act (Laws 1901, chapter 133) had not been complied with when Anderson had sold the first one-half interest to Elledge.

The bill of complaint alleged that Sumpter had conveyed $6,500 of the capital stock of the Sands & Sumpter Drug Company, of Nashville, a corporation, to the defendant, his wife, for the purpose of hindering, delaying, and defrauding complainant, Elledge, in the collection of his demands growing out of the said contract of indemnity.

The proof establishes that the transfer of the shares was voluntary and fraudulent upon the part of Sumpter, but fails to show participation of the wife, Lula M. Sumpter, in the fraud.

This opinion deals only with the rights of Mrs. Sumpter, arising out of expenditures claimed to have

been made by her in the payment or purchase of debts of her husband after the transfer to her of the shares of stock, in an accounting by her for the value of the shares.

Complainant, Elledge, contends that Mrs. Sumpter did not, in contemplation of law, pay two of the notes executed by her husband—one to the Citizens' National Bank, of Pulaski, in the sum of $1,950, the other to the People's National Bank in the sum of $855. It appears that these two notes were secured by a pledge of a policy of insurance of $5,000 on the life of J. Rhea Sumpter, the policy being payable to Mrs. Sumpter; the insured and his wife, as the sole beneficiary, having joined in assigning the policy to the banks as collateral security for these debts of the husband. It does not appear that there was reserved in the policy contract a right in the insured to change the beneficiary.

It is therefore clear that the efficient and real assignor and pledgor of the policy was the beneficiary, Mrs. Sumpter, since it was not in the power of the insured husband himself to make a valid assignment of the policy to third persons, in the absence of such a reservation. *Scobey* v. *Waters,* 10 Lea (78 Tenn.), 551; *Gosling* v. *Caldwell,* 1 Lea (69 Tenn.), 454, 27 Am. Rep., 774; *Marquet* v. *Insurance Co.,* 128 Tenn., 213, 159 S. W., 733, L. R. A., 1915B, 749, Ann. Cas., 1915B, 667, and cases cited.

Even under the Bankruptcy Act life insurance policies which are (as was this one) by the laws of

the States exempt from the claims of creditors, do not pass to the trustee in bankruptcy under section 70a of that act. *Holden* v. *Stratton,* 198 U. S. 202, 25 Sup. Ct., 656, 49 L. Ed., 1018.

The principle debt was satisfied by the proceeds of the policy after the husband's death, and when that payment was made to the bank it was made by Mrs. Sumpter.

Another controversy grows out of the fact that a portion of the shares of stock fraudulently transferred to Mrs. Sumpter were at the time held by the Fourth National Bank of Nashville as a collateral pledge made by J. Rhea Sumpter to secure his note to the bank for $1,830.25. This note was paid by Mrs. Sumpter out of the life insurance proceeds. It is not suggested or shown that she agreed to pay this note as a part of the consideration for the transfer. Inasmuch as Mrs. Sumpter was not an active participant in the fraud, she is, in accounting, to be allowed her full expenditure in lifting the collateral shares out of pledge.

When personal property pledged to secure the payment of a valid debt is fraudulently transferred by the owner, his creditors are not, upon setting aside the transfer, entitled to recover from the nonparticipating transferee the full value of the pledged property, but only its value after deducting the amount of the debt secured by the pledge.

The court of appeals of New York in the case of *Hamilton National Bank* v. *Halsted,* 134 N. Y., 520,

31 N. E., 900, 30 Am. St. Rep., 693, so decided, following *Loos* v. *Wilkinson*, 113 N. Y., 485, 21 N. E., 392, 4 L. R. A., 353, 10 Am. St. Rep., 495, in which last-named case Judge EARL remarked that the contrary doctrine in result "would be spoilation, not justice or equity." Judge PARKER in the Halsted Case said that the creditors' undertaking in that case was to compel the fraudulent transferee to respond to them for an interest in property which he did not get or seek to get, and which his vendor did not have to convey or transfer to him.

The lack of equity in the claim of complainant, Elledge, in this aspect, is made manifest by the fact that a creditor at the date of the transfer to Mrs. Sumpter, if armed with process, would have had to subject the pledged property in subordination to the rights of the pledgees.

Mrs. Sumpter also used her own funds in paying or buying up common or unsecured claims against her husband's estate after his decease; and it is urged by complainant, Elledge, that she cannot be protected in respect thereto or stand on said demands to any extent, because, it is claimed, the expenditures were made by her after she had notice that the transfer of the shares of stock to her had been made in fraud upon creditors of her husband. This argument is based upon the principle that, where a grantee accepts property under a fraudulent conveyance innocently, he is not entitled to protection for money paid after becoming aware of the true character of the conveyance.

But in the pending case there was no payment made
to the fraudulent transferor; all expenditures went
into the hands of his creditors. If Mrs. Sumpter had
agreed to pay the value of the shares to such credi-
tors as a part of the consideration, and had done so,
the conveyance would not have been fraudulent.
Then, after learning that the transfer was fraudu-
lent, it was her duty to pay the value of the stock
to the creditors of the transferor, to whom it prop-
erly belonged. Mrs. Sumpter did voluntarily what
equity would have compelled, and she is entitled to
stand on the demands so satisfied. *Cottingham* v.
*Greeley Barnham Groc. Co.*, 129 Ala., 200, 30 South.,
560, 87 Am. St. Rep., 58.

And this is true whether the demands were form-
ally assigned to her or not. Some were so assigned;
others not.

In *Adams* v. *Young,* 200 Mass., 588, 86 N. E., 942,
it was said:

"One whose purchase of property has for that
reason [fraud] been avoided by the creditors of the
seller, being himself free from any actual fraud, may
stand in the place of creditors whose demands he
has paid out of the property or in consideration of
the transfer to himself. . . . So if he has paid
off debts which constituted liens or incumbrances
upon the property conveyed to him, he may for his
protection and reimbursement take by subrogation
the rights of the secured creditors whom he has
thus paid. . . . If, instead of a discharge,

he has taken an assignment of such a mortgage or other incumbrance, it will not be treated as merged, but will be upheld in his hands as a charge upon the property.''

Mrs. Sumpter is therefore also entitled to be protected in respect of her payment of her husband's non-lien debts.

To what extent? To the full amount thereof, or on a basis of *pro rata* distribution to her and to complainant Elledge?

This court in *Fecheimer-Keifer Co.* v. *Burton,* 128 Tenn., 682, 688, 164 S. W., 1179, 51 L. R. A. (N. S.,) 343, held that where a sale was fraudulent because of a violation of the Bulk Sales Act the rule of such a *pro rata* distribution would be enforced; and it was there remarked that the rule had been justly applied where the conveyance was a fraudulent one under the test of common-law principles, and the defendant must for relief invoke the application of the doctrine of subrogation. This is a just rule. *Robinson* v. *Stewart,* 10 N. Y., 189; *Kehr* v. *Smith,* 20 *Wall.* (U. S.), 36, 22 L. Ed., 315; *Chatterton* v *Mason,* 86 Md., 236, 248, 37 Atl. 960.

Subrogation will be granted or a charge enforced in a court of equity only where an equitable result would be reached, but not to work injustice to another in the defeat of an equal equity. *Fecheimer-Keifer Co.* v. *Burton,* supra.

The special chancellor in his decree followed these principles. All other attacks on that decree by assignments of error are not well based. Affirmed.