## GEO. W. THOMAS v. J. S. MARCH & SON.

### Middle Section.   March 6, 1926.

### Certiorari denied by Supreme Court.   July 3, 1926.

1. **Fraudulent conveyances.   Bulk sales law does not prohibit seller from disposing of proceeds of sale as he desires.**
   In an action to prevent the preference of a creditor in the proceeds of the sale of a store where the bulk sales law had been complied with, and the purchase price deposited with a trustee, held the sale having been made according to the terms prescribed by the statute it was not fraudulent, either at law or in fact and the right of the seller to control and direct the disposition of the proceeds of the sale was as complete as if the bulk sales law had never been enacted.

2. **Fraudulent conveyances.   Having complied with bulk sales law seller may prefer creditors from the proceeds.**
   If there has been a compliance with the bulk sales law the seller of a stock of merchandise may apply the entire proceeds to the extinguishment of the debt of one creditor to the exclusion of his other creditors.

Appeal from Chancery Court of Lincoln County; Hon. Thos. B. Lytle, Chancellor.

Reversed.

Giles L. Evans, of Nashville, for appellants.

Routt & Myers, of Fayetteville, for appellee.

FAW, P. J.   The complainant G. W. Thomas, a retail merchant doing business at Bellville in Lincoln County, Tennessee, sold his entire stock of merchandise and fixtures for cash to the defendants J. S. March and George March, partners under the firm name and style of J. S. March & Son.   At the time of the sale Thomas was indebted to a number of wholesale merchants for merchandise which had gone into the aforesaid business at Bellville, and he was also indebted to three banks at Fayetteville and to one or two other persons, including the defendant George D. Cunningham, for money borrowed and used by Thomas for purposes other than the mercantile business.

After the terms of the contract of sale and purchase had been agreed upon, the seller and buyers fully complied with the require- ments of the bulk sales law (Shan. Anno. Code, Sections 3193a1-3193a3), and thereafter the buyers, through their attorney, placed the proceeds of the sale, amounting to $3161.01, in the hands of the defendant H. E. Dryden, with the statement to Mr. Dryden at the time that he would be instructed later as to the "distribution" of the fund.

Complainant Thomas was not a party to the arrangement whereby the purchase-price of the stock of goods was placed in Mr. Dryden's hands. On the day fixed for the consummation of their purchase of the stock of merchandise, J. S. March & Son, desiring to close the transaction under the supervision of their attorney, Mr. W. B. Lamb, Jr., went to Fayetteville and there met several of the creditors of Thomas, or their representatives, in the office of Mr. Lamb. Thomas was at his home, sick, and did not go to Fayetteville on that day, and did not have a representative at the meeting in Mr. Lamb's office at the time above mentioned. Thomas had made no agreement and had given no instructions as to the disposition to be made of the cash to be paid by defendant March & Son for the stock of goods, other than a mere general statement to a member of that firm that it was his purpose to apply the money received for the stock of merchandise and fixtures to the payment of his mercantile creditors.

The largest mercantile creditor of Thomas was the complainant J. A. Sloan Company, a corporation engaged in the wholesale mercantile business at Fayetteville. Thomas owed the J. A. Sloan Company $1551.91, and a few weeks after the fund representing the purchase-price of the merchandise sold by Thomas to March & Son had been placed in the hands of Dryden, and before Dryden had received instructions from anyone as to its "distribution," complainant Thomas executed and delivered to complainant J. A. Sloan Company an order on Dryden in words and figures as follows, viz:

"J. A. SLOAN COMPANY
"WHOLESALE GROCERS
"FINE COFFEES.
"Belleville, Tenn., April 7th, 1922.
"To
"Mr. H. E. Dryden.

"You will please pay to order of J. A. Sloan Co. the sum of Fifteen hundred and fifty-one dollars and ninety-one cents (1551.91) this being the amount I am due them out of any funds that you may have in your hands turned over to you by J. S. March & Son to be paid to my creditors.

"In event there is not sufficient to pay the above amount left in your hands, you will please pay whatever amount you have under the above amount and this shall be your receipt. This the 7th day of April 1922.

"(Signed) Geo. W. Thomas."

Mr. Dryden declined to honor or accept the above quoted order, and thereupon Geo. W. Thomas and J. A. Sloan Company, as complainants, filed this bill seeking a recovery, for the benefit of J. A. Sloan Company, against H. E. Dryden for the amount of said order, and complainant Thomas prayed that the balance of said fund in the hands of Dryden be "applied to the payment of his wholesale and jobber creditors on the debts incurred for and on account of said mercantile business," except that he asked that defendants Neely, Harwell & Co. be required to first satisfy their debts, as far as possible, out of certain securities held by them.

In addition to J. S. March & Son and H. E. Dryden, all of the creditors of Geo. W. Thomas were made defendants, but H. E. Dryden, George D. Cunningham and Fayetteville Ice Company were the only defendants who answered the bill. Judgments pro confesso were taken against the other defendants.

In his answer, H. E. Dryden stated that W. B. Lamb, Jr., purporting to represent J. S. March & Son, and also purporting to represent creditors of Geo. W. Thomas whose names and the nature of whose claims were then unknown to him (Dryden), deposited with Dryden the sum of $3161.01, stating to him that he would be later advised as to how and to whom he should pay out same on the debts of said Thomas; that he understood that said sum represented the cash purchase-price of a stock of goods sold by Thomas to March & Son; that at the time said money was placed in his hands he was under the impression that it was to go to the payment of wholesale or mercantile creditors, though he has no distinct recollection of its being so expressly stated to him; that he is president of the Elk National Bank and said bank holds a note endorsed to it by Crawford and Ashby which was executed by said Thomas and which evidenced the purchase consideration for a certain truck, or a part thereof, to which truck title is retained in said note; that he (Dryden) did not understand that said note held by the Elk National Bank would or could share in said proceeds or receive any payment therefrom; that he was acting as a trustee or bailee for said sum of money gratuitously and as an accommodiation, thinking that the parties would agree among themselves and give him proper directions as to the distribution of said sum, but that they had not done so and, in his answer, he ask the court that he be directed by the court as to when and how and to whom he should pay out said money.

Defendant Dryden states further in his answer that he under-stands that complainant Thomas owns other property, consisting of equities in real estate notes and accounts, but as to the ability of said Thomas to pay any portion of his obligations therefrom he does not know, nor does he know what amount evidenced by the re-spective debts referred to in the original bill went into said mer-cantile business. Dryden admits that on April 7, 1922, or there-abouts, there was exhibited to him an order from complainant Thomas directing him (Dryden) to pay the account of the J. A. Sloan Company in full, and that for his own protection he refused to honor said order or assignment or pay said amount.

Defendant Dryden also admitted in his answer the truth of an averment of the complainant's bill that defendant Cunningham had filed with him certain notes, but Dryden stated that he did not know the purpose for which the funds represented by the notes were ex-pended by Thomas, the maker of the notes to Cunningham. Dryden stated further that it was his understanding that defendant Cun-ningham holds collateral security to said notes of Thomas, but that he, Dryden, knows nothing about the value of such collateral. Dry-den stated that he was simply ''carrying out faith'' with the defend-ant March & Son and others and protecting himself in the premises, and was not otherwise interested in the matters involved in this cause. He stated that he has said sum of $3161.01 in cash, and is ready and willing to pay same out to such party or parties, in such proportion or proportions, and in such manner as the court may direct, and he asks the court that he be given immediate relief by proper orders for his protection, either by distributing said sum or by allowing him to pay same into court and be dismissed with his costs, and to that end he prayed that his answer be deemed and treated as in the nature of an interpleader, and he states that ''he hereby tenders said sum for the purposes aforesaid.''

The Fayetteville Ice Company stated in its answer that it could neither admit nor deny the allegations contained in the original bill, or any of them, except that it is true that complainant Thomas is indebted to this defendant by check in the sum of $100, dated December 5, 1921, no part of which has been paid, and for the pay-ment of which this defendant insists that it is entitled to share as other creditors in the distribution of the $3161.01 mentioned in the original bill, and that it would further show to the court that said sum is primarily, in view of the election of said Thomas, bound for the payment of mercantile creditors in full if possible, and if not pro rata, and that other creditors have no right to share therein until such creditors are paid in full.

The answer of the Fayetteville Ice Company does not purport to be filed by a solicitor or attorney, and the record bears no evidence

that the Ice Company made any other or further appearance or active contest in the case after filing its answer.

Aside from the answer of the Fayetteville Ice Company above mentioned, the only defendant who contested the right of the complainants to the relief sought by the bill was George D. Cunningham, and the chancellor sustained his main contention and decreed in his favor.

The answer of the defendant Cunningham is of considerable length but some of the statements therein are not now material and we shall not undertake to do more than state enough of said answer to present, in its general outline, his theory of the case. It is stated in his answer that before the sale was made by Thomas to March & Son, one J. M. Mansfield, the manager for complainant J. A. Sloan Company in the town of Fayetteville, went to defendant Cunningham and told him that such trade was pending and that he (Mansfield) had seen or heard from all of the other creditors of Thomas and they were all willing to the sale, and Mansfield wanted to know what defendant Cunningham was willing to do; that Mansfield stated to defendant Cunningham that the money which was being paid by the purchaser amounted to $3100 and was to be paid to defendant H. E. Dryden, and to be prorated on the debt of defendant Cunningham and all other indebtedness of said Thomas; that with these statements from said Mansfield, who seemed to have charge of said matters, defendant Cunningham agreed to said sale, and agreed to take a pro rata part of the proceeds arising from same on the indebtedness he held; that pursuant to his part of said agreement, he, defendant Cunningham, took his two notes, viz: one dated January 1, 1921, due twelve months from its date, for $1650, and one dated January 24, 1919, due December 24, 1919, for $750.01, and filed same with defendant Dryden in order that he might receive from said Dryden his pro rata on said two notes.

Defendant Cunningham stated further in his answer that the money complainant Thomas got from him was used in paying indebtedness for goods bought by him in said mercantile business; that defendant Cunningham sold no lands to said Thomas and bought no land notes from said Thomas, but that Thomas did place with him land notes as collateral, which he did not file with said Dryden or release, but he states that this collateral is, in his opinion, not worth five cents on the dollar, and that the only security he has is the pro rata that he insists that he is entitled to under the agreement of said March and others.

Defendant Cunningham states further that he is advised that the fund in the hands of defendant Dryden does not belong to the defendants who sold goods to complainant Thomas any more than it belongs to any other creditor, and that defendant Cunningham is

just as much entitled to collect his debt as any one of the other defendants set out in the caption of the bill in this cause.

Defendant Cunningham further avers in his answer that complainant Geo. W. Thomas is hopelessly insolvent; that it is true that complainant Thomas has some lands in his possession, but that defendant Cunningham is informed that there is more against these lands than it is possible for them to sell for; that he is informed that the notes and accounts held by complainant Thomas are really worth very little and would go a very short way towards the payment of his indebtedness; that he thinks he will be able to prove that the $3100 in the hands of defendant is virtually all that complainant Geo. W. Thomas is worth; that, to say the least of it, the said sum of $3100 constitutes the bulk of the property of complainant Thomas, and if defendant Cunningham is not permitted to have his pro rata of said money then he has no showing to collect any part of his indebtedness.

Proof was taken on behalf of the parties, respectively, and thereafter the case was heard upon the pleadings and proof, and the chancellor adjudged and decreed that the allegations of the original bill are fully met by the answer of defendant Cunningham and "denied by the proof as to said Cunningham," and that "defendant Cunningham is entitled to have and receive his pro rata share with other creditors of complainant Thomas whose claims have not been satisfied and paid, including the wholesale mercantile creditors and jobbers, and the defendant Bagley, executor, set out in the pleadings and shown by the proof, and that the prayer of the original bill for the payment in full of the claim of defendant J. A. Sloan Company and for the payment pro rata of the balance of the fund in the hands of the defendant Dryden to other mercantile creditors and wholesalers set out in the original bill must be denied and disallowed." The chancellor further adjudged that the complainants pay the costs of the cause, for which execution was awarded.

The complainants excepted to the decree of the court and prayed an appeal to this court, which was granted by the chancellor and perfected by the complainants.

The assignments of error complain of the action of the chancellor in admitting, over the objection of the complainants, certain testimony offered by defendant Cunningham; and, through other assignments, the complainants assert that the decree of the chancellor is erroneous, and that the complainants should have been granted the relief sought by their bill.

The theory of the complainants is that the fund realized from the sale by Thomas to J. S. March & Son of the stock of merchandise and fixtures was the property of complainant Thomas, and that he

had the right to apply said fund to the payment of such of his creditors as he preferred.

It is further contended for complainants that inasmuch as Thomas and J. S. March & Son fully complied with all the requirements of the bulk sales law, the creditors of Thomas had no right, without legal process or the consent of Thomas, to intermeddle with the funds derived from such sale, and, therefore, the testimony of W. B. Lamb, Jr., and defendant G. D. Cunningham (which is set out in the assignments of error) tending to prove agreements between creditors of Thomas, not made in his presence or with his knowledge or consent, looking to the distribution of the proceeds of such sale among the creditors of Thomas, was incompetent, and should not have been admitted by the chancellor.

We are of the opinion that the assignments of error must be sustained. If complainant Thomas and defendants March & Son had not complied with the bulk sales law, the stock of merchandise in the hands of March & Son, or the proceeds thereof in the hands of Dryden, might have been impressed with a trust in favor of the creditors of Thomas. Fecheimer-Keifer Company v. Burton, 128 Tenn., 682, 687; Elledge v. Anderson, 133 Tenn., 478; 12 R. C. L., p. 530, par. 59.

But the purpose of the bulk sales law (Acts of 1901, ch. 133), as stated in its caption, is "to provide the terms upon which sales in bulk of stocks of merchandise, or of any portion thereof otherwise than in the ordinary course of trade may be made."

The sale here in question having been made according to the "terms" prescribed by the statute, it was not fraudulent, either in law or in fact, and the right of Thomas, the seller, to control and direct the disposition of the proceeds of the sale was as complete as if the bulk sales law had never been enacted.

The bulk sales law is in derogation of the common law and of an owner's right to alienate his property, and therefore should be strictly construed. 12 R. C. L., p. 525; Swift & Co. v. Templos (N. C.), 7 A. L. R. 1581.

In Fecheimer-Keifer Company v. Burton, supra, at p. 686, our Supreme Court expressly approved the holding in Sampson v. Brandon Grocery Co., 127 Ga., 454, — 9 Anno. Cas., 331, — that, if there has been a compliance with the bulk sales law, the seller of a stock of merchandise may apply the entire proceeds to the extinguishment of the debt of one creditor to the exclusion of his other creditors.

Complainant Thomas assigned $1551.91 of the fund in Dryden's hands to the complainant J. A. Sloan Company for the satisfaction of his debt to that company; and in this he was within his legal

rights. The averments and prayer of the original bill operated, in effect, as an assignment by complainant Thomas of the remainder of the fund in Dryden's hands ($1609.10) for the benefits, pro rata, of "his wholesale and jobber creditors on the debts incurred for and on account of said mercantile business," except J. A. Sloan Company and Neely, Harwell & Company; but the amounts owing by complainant Thomas to his "wholesale and jobber creditors," respectively, do not fully and definitely appear from the record.

The assignments of error are sustained and the decree of the chancellor will be reversed, the bill of the complainants will be sustained, and a decree will be entered against defendant H. E. Dryden for $1551.91, in favor of complainant Geo. W. Thomas, for the use of complainant J. A. Sloan Company, and defendant Dryden will be required to pay the sum of $1609.10 (representing the remainder of the fund in his hands as aforesaid) into the registry of the chancery court of Lincoln county, to be distributed ratably among the wholesale and jobber creditors of complainant Thomas named in the original bill, whose debts may be ascertained by a reference under the orders and decrees of the chancery court, and the cause will be remanded to the chancery court of Lincoln county for such reference, and for the collection and distribution of the fund under the orders and decrees of that court in harmony with the opinion and decree of this court.

The costs of the appeal will be adjudged against the defendant G. D. Cunningham. Under all the facts of the case, the court is of the opinion that it would be inequitable to tax defendant Dryden with any costs. The costs incident to the filing of the original bill and the service of process on the defendants to the original bill will be adjudged against complainants Geo. W. Thomas and J. A. Sloan Company. The remainder of the costs heretofore accrued in the chancery court will be adjudged against defendant G. D. Cunningham. The costs which may hereafter accrue in the chancery court will be paid as the chancellor may adjudge.

Crownover and DeWitt, JJ., concur.