LEE TIRE & RUBBER COMPANY.

*vs.*

SNOW HUDSON CO., INC., AND
BLAISDELL AUTOMOBILE CO., TRUSTEE.

Knox.     Opinion December 14, 1931.

476

*Christopher S. Roberts*, for plaintiff.
*Allen L. Bird*, for the defendant and trustee.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

STURGIS, J. This action of debt, begun by trustee process, originated in the Superior Court. The principal defendant defaulted by agreement and the Security Trust Co., named as a trustee, was discharged. The Blaisdell Automobile Co., upon its disclosure, however, was adjudged trustee and the plaintiff reserved exceptions.

The facts appearing in the Agreed Statement, submitted below and included in the Bill of Exceptions, indicate that on September 24, 1928, the principal defendant sold its entire stock of merchandise, furniture, equipment and fixtures to the Blaisdell Automobile Co. for $4,000. The defendant then owed $19,081.69 to its unsecured creditors and the value of its stock in trade was $1,000. Neither the seller nor the purchaser made an inventory of the stock sold, nor were the creditors of the defendant notified in accordance with R. S., Chap. 123, Sec. 6, known as the Bulk Sales Act.

About a week later, the plaintiff received a letter from the de-

fendant announcing its insolvency and the sale of its stock to the trustee. A check for $17.50, dated October 2, 1928, and stated to be a 5% dividend on the plaintiff's claim, was inclosed and a further dividend promised when notes and accounts receivable were collected. In reply to this letter, on November 10, 1928, the plaintiff notified the defendant's attorney that it was unwilling to accede to the proposed liquidation and, in later correspondence, advanced the claim that its merchandise was sent to the defendant on consignment. Early in January, 1929, the plaintiff cashed its dividend check, received the preceding October, and on March 19, 1929, brought suit against the defendant on its merchandise account.

On August 12, 1929, the defendant, having proceeded with its voluntary liquidation, sent the plaintiff's attorney a check for $31.59 with the statement that the remittance was a second and final dividend of 9½% on the plaintiff's claim, reduced by the amount of the first dividend. The check, although retained, was not cashed and, on September 21, 1929, the plaintiff caused judgment to be entered in its pending suit against the defendant for $375.63. Four days later, this action of debt on that judgment was begun by trustee process and the Blaisdell Automobile Co., as also the Security Trust Co., was named trustee.

The presiding Justice hearing the disclosure found that, although the plaintiff accepted the first dividend check for $17.50, it represented a disbursement of proceeds of assets other than stock in trade, and the second and final dividend check of $31.59, which might include a pro rata division of proceeds of the stock in trade, had never been cashed. His further conclusion was that the defendant undertook in good faith to apply the proceeds of the sale of all its assets pro rata among its creditors and towards the liquidation of its indebtedness and had effected such a division except as to the plaintiff. He accepted the trustee's purchase of the stock in trade as a purchase made in good faith for full value. Upon these findings, the trustee was charged with $19.19 as being 5.11% of the plaintiff's judgment and the ratio which the value of the stock was found to bear to the defendant's total indebtedness.

The ruling below was made upon the authority of *Ticonic Na-*

*tional Bank* v. *The Fashion Waist Shop Co.*, and TRUSTEE, 123 Me., 509, where this Court in accord with the weight of authority holds that, in conveyances of goods in violation of the Bulk Sales Act, as to the vendor and vendee and all the rest of the world except creditors of the vendor, the title passes, but as to such creditors the legal title has not passed and they may proceed by trustee process against the goods in the vendee's possession or against the proceeds to the value thereof in case of resale. And the rule is adopted that the goods so conveyed or the value thereof, in case of resale, in equity or upon trustee process, are treated as held by the vendee in the nature of a trust fund for all the creditors, and the vendee, having in good faith paid any of the creditors their respective pro rata shares of the value of the goods, is entitled to be subrogated to the rights of such creditors therein and is liable only to unpaid creditors to the amount of their pro rata claims. Among the cases there cited are *Parham* v. *Potts-Thompson Co.*, 127 Ga., 303, 305; *Linn Bank* v. *Davis*, 103 Kan., 672; *Rabalsky* v. *Levenson*, 221 Mass., 289, 292; *Adams* v. *Young*, 200 Mass., 588, 591; *Fecheimer-Keifer Co.* v. *Burton*, 128 Tenn., 682; *Kohn* v. *Fishbach*, 36 Wash., 69.

The plaintiff, however, denies the application of the foregoing rule to the case at bar, pointing out that here the principal defendant, and not the trustee, paid the creditors. We do not think its contention should be sustained.

The Justice hearing the disclosure found, and his finding is not here questioned, that the trustee purchased the stock in trade, which the plaintiff seeks to reach, in good faith and for full value. He also found in effect, at least, that the vendor distributed the purchase price received pro rata among all its creditors, the plaintiff failing to receive its share only by reason of its neglect or refusal to cash its dividend check. If the record does not permit the inference that the payment by the vendor was made at the vendee's direction, it warrants the conclusion that it was in reality the vendee's money which passed to the creditors and enriched them at its expense.

In the *Ticonic National Bank* v. *The Fashion Waist Shop Co.*, supra, the purchase price of a stock in trade bought in violation

of the Bulk Sales Act was not paid to the vendor's creditors by the trustee, but deposited with an attorney who made the actual payments.

In *LaSalle O. H. Co.* v. *LaSalle Amus. Co.*, 289 Ill., 194, a garnishee was subrogated to the claims of creditors paid by the vendor out of purchase money received from the garnishee in a sale in violation of the Act.

In *Adams* v. *Young*, supra, the rule was applied in a proceeding in equity to set aside a sale of an entire stock in trade in violation of the Massachusetts Bulk Sales Law where the vendor, with the proceeds of the sale, paid and procured the discharge of a mortgage debt, and it was observed: "If it were necessary to pass upon that question, it would not be easy to avoid saying that they could rest also upon the mortgage which was paid and discharged. It was their money that paid the mortgage debts. The fact that the money passed through the hands of the mortgagor and the form of the transfer which the defendants took can not overcome the real effect of the transaction."

In *Fecheimer-Keifer Co.* v. *Burton*, supra, where a retail merchant sold his stock in bulk without compliance with the Bulk Sales Act and paid over the proceeds to a part of his creditors, the purchaser was subrogated to the claims of the creditors whose demands were thus paid.

The doctrine of subrogation is a creature of equity and is administered so as to secure real and essential justice without regard to form, which it ignores, looking only to the substance. The equitable principle underlying its application to conveyances in violation of the Bulk Sales Act we conceive to be, that if the value of a stock in trade so conveyed is in fact and in good faith distributed among the vendor's creditors, it is not real and essential justice that the creditors so paid should reap the entire benefits of the transaction and the purchaser bear the whole loss. It is equity that the purchaser should be substituted for the creditors to the extent, at least, of their pro rata claims against the stock. And we see no valid reason why the form or method of payment should control. The presiding Justice having found that the proceeds of the sale here attacked were in fact applied to the payment of the claims of

the vendor's creditors, we think, as in the cases noted, the Trustee was entitled to be subrogated thereto regardless of the fact that the money passed through the vendor's hands. The real effect of the transaction was a payment by the trustee.

The plaintiff, by bringing suit against the principal defendant on its merchandise account and securing judgment thereon, has only the rights of a general creditor and to its pro rata share of the value of the goods which the trustee purchased, a re-computation of which indicates that the trustee should be charged for $19.68.

The exception is overruled, but the slight mathematical error noted makes it necessary to remand the case to the court below, that judgment may be there entered for the plaintiff against the Trustee for $19.68 in accordance with this opinion.

*So ordered.*