PHILLIP D. GILBERT *v.* W. S. ASHBY *et al.*

(*Knoxville.*   September Term, 1915.)

1. **FRAUDULENT CONVEYANCES.** Sale in bulk.    Partnership property.    Notice to individual creditors.

While notice of sale in bulk of a firm's stock in trade to one of the partners should have been given the individual creditors of the selling partner, they cannot attack it as fraudulent; payment of the partnership creditors, assumed by the buyer, consuming the whole stock. (*Post, pp.* 371, 372.)

Cases sited and approved: Daly v. Drug Co., 127 Tenn., 412; Mahoney-Jones Co. v. Sams Bros., 128 Tenn., 207; Fecheimer-Keifer Co. v. Burton, 128 Tenn., 682; Buck Stove Co. v. Johnson, 75 Tenn., 282; Fowlkes v. Heirs & Creditors of Bowers, 79 Tenn., 144; Jackson Insurance Co. v. Partee, 56 Tenn., 296; Carver Gin & Machine Co. v. Bannon & Co., 85 Tenn., 712.

2. **FRAUDULENT CONVEYANCES.** Consideration.    Husband and wife.

The undertaking by a wife to personally care for her husband's mother is consideration for his conveyance to her, attacked as fraudulent, of property which had been conveyed to him in consideration that he would care for his mother. (*Post, pp.* 372-374.

Case cited and approved:   Carpenter v. Franklin, 89 Tenn., 142.

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County.—W. B. JARVIN, Chancellor.

MOORE & DARWIN, for appellant.

LUSK & THOMPSON and WILL J. WATSON, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill in the present case was filed by the trustee in bankruptcy of J. H. Hope to set aside as fraudulent certain sales and conveyances made by him. We deem it necessary in this opinion to consider only two of the transactions.

1. J. H. Hope and his daughter, Amanda T. Hope, were partners in a small grocery store, carrying a stock of goods worth between $900 and $1,000. On June 1, 1913, they dissolved partnership, the daughter taking the stock and agreeing to pay the partnership debts, except that she permitted her father to take out of the stock $10 or $15 worth of goods as the part that would belong to him after the settlement of the debts. The partnership debts amounted to between $900 and $1,000, or about the value of the stock. These debts were paid by the purchasing partner, Amanda T. Hope. The complainant represents individual creditors of J. H. Hope. The contention is that Amanda T. Hope is liable for the value of the stock of goods because she did not give notice to all the creditors of her father, as required by the bulk sales law of this State. *Daly* v. *Drug Co.*, 127 Tenn. (19 Cates), 412, 155 S. W., 167, Ann. Cas., 1914B, 1101; *Mahoney-Jones Co.* v. *Sams Bros*, 128 Tenn. (1 Thomp.), 207, 159 S. W., 1094; *Fecheimer-Keifer Co.* v. *Burton,* 128 Tenn., 682, 164 S. W., 1179.

While it is true, as held in *Daly* v. *Drug Co.*, that the bulk sales law applies to the sale and purchase of an interest in a stock of goods by one partner from another,

yet this principle can be of no service to the complainant, because the partnership creditors were first entitled to payment over the individual creditors of either member of the firm (*Buck Stove Co.* v. *Johnson,* 75 Tenn. [7 Lea], 282; *Fowlkes* v. *Heirs & Creditors of Bowers,* 79 Tenn. [11 Lea], 144, 146; *Jackson Insurance Co.* v. *Partee,* 56 Tenn. [9 Heisk.], 296; *Carver Gin & Machine C.* v. *Bannon & Co.,* 85 Tenn. [1 Pick.], 712, 4 S. W., 831, 4 Am. St. Rep., 803, and cases cited), and, as the payment of this class of creditors by the purchasing partner consumed the whole, or practically the whole, of the stock, there was nothing left for the several creditors of J. H. Hope, the selling partner, and no injury was inflicted upon the complainant representing creditors of the latter class. This point was referred to and reserved in *Mahoney-Jones Co.* v. *Sams Bros.,* supra, 128 Tenn., 210, 159 S. W., 1094, and in the last of our published cases upon the subject, *Fecheimer-Keifer Co.* v. *Burton,* supra, it was held that a creditor who was not satisfied could recover from the purchaser only his *pro rata.* Where the whole fund is consumed by creditors having priorities, there can be no *pro rata* left for inferior creditors.

2. The mother of J. H. Hope conveyed to him two lots in Chattanooga, under the consideration that he would support her the rest of her life, would bury her, would place a monument at her grave and at the grave of her deceased husband. Hope received his mother in his home, but was away most of the time, and thus left the care of the mother wholly to his wife. His wife ob-

jected, and refused to further give attention to the mother unless the lots should be conveyed to her. The mother was old and blind and helpless. Hope had no other means of having his mother taken care of. Under these circumstances he conveyed the property to his wife to secure the performance of the services which he had agreed to perform for his mother. It is insisted that this was but a voluntary gift, inasmuch as the husband had the right to command his wife's services. This right is no better than a fiction as against an unwilling wife, since the law gives no means of compulsion; and if such means were given, few husbands would be found willing to use them.

Under the facts stated, we think the services which the wife undertook to perform furnished a valuable consideration for the deed, and that it could not be considered voluntary. Taking a more technical view of the matter, it may be said that the husband had the right in good faith to bestow upon his wife his right to her own services as separate estate, and then to contract with her for the performance to him of those services as a consideration for property conveyed to her. No creditor could object to such an arrangement made in good faith because he could not be harmed, since in no event could he command the services of the wife, through the husband or in any other way. This is within the principle of *Carpenter* v. *Franklin,* 89 Tenn. (5 Pick.), 142, 14 S. W., 484.

Beyond question it would not be in accord with settled law, or with sound policy, to concede, or leave

grounds for inference, that a wife by failure to discharge her marital duties can extort a conveyance of her husband's property, and lawfully claim it as against her husband's creditors. However, under the special facts of the present case, we believe the wife's demand was made in good faith, and was reasonable. In addition to what has already been said on this subject, it must be noted that the husband's mother was, so to speak, a stranger in the family, one to whom the wife owed no duty in her capacity as such, and one whose presence added new and onerous duties to those incumbent on her as a wife. And, while it is true that many women perform without compensation, and without complaint, and with a compassion worthy of reverence, the duty thus imposed by their husbands, it is no more than right that, where the husband is himself receiving special compensation from his relative, and he devolves the whole care of her upon his wife, the latter should be permitted to enjoy such special compensation as her separate estate.

There were other points made in the briefs, all of which have been considered, but we think those which we have stated are sufficient to support the conclusions we have reached.

The result is that the decree of the court of civil appeals is affirmed.