CHARLES V. YORK *v.* J. T. AMBROSE.*

*(Nashville.* December Term, 1927.)

Opinion filed, December 17, 1927.

1. BULK SALES LAW. CONTRACTS. CREDITORS.

The Bulk Sales Law was passed for the purpose of protecting creditors of merchants who sell their stock in bulk. (Post, p. 317.)

Citing: Acts of 1901, chapter 133; Gilbert v. Ashby, 133 Tenn. (6 Thomp.), 370; Mahony-Jones Co. v. Sam Bros., 128 Tenn. (1 Thomp.), 207; Neas v. Borches, 109 Tenn. (1 Cates), 398.

2. BULK SALES LAW. CONTRACTS. SUBROGATION.

In some cases buyers of stock of merchandise has been subrogated to the rights of creditors whose claims they have paid. (Post, p. 318.)

Citing: Elledge v. Sumpter, 140 Tenn. (13 Thomp.), 17; Elledge v. Anderson, 133 Tenn. (6 Thomp.), 483; Fecheimer-Keifer Co. v. Burton, 128 Tenn. (1 Thomp.), 682.

3. BULK SALES LAW. CREDITORS. COMMON LAW. CONSTRUCTION OF STATUTES.

On account of the fact that the Bulk Sales Law is penal in character, in derogation of the common law, and contrary to the rights of individuals to alienate their property without unreasonable restrictions, the Statute cannot be construed to forbid, as between the buyer and the seller, the sale of merchandise in bulk where no creditor exists or none whose rights are affected. (Post, p. 319.)

Citing: Daly v. Drug Co., 127 Tenn. (19 Cates), 412; Keller v. Fowler Bros., 148 Tenn. (21 Thomp.), 582.

4. BULK SALES LAW. FRAUD.

In the absence of actual fraud where the rights of creditors of the seller are not involved, noncompliance with the Act does not render the sale void. (Post, p. 319.)

Citing: 27 C. J. 887; Gilbert v. Ashby, 133 Tenn. (6 Thomp.), 370.

5. BULK SALES LAW.  CONTRACTS.

Where it appears that the defendant sold an interest in the business
to the complainant under a contract which provides that the de-
fendant shall not again engage in business, directly, indirectly,
solely or jointly; that the defendant had procured a corporation
to be formed by others; that the complainant should assume all
of the debts of the partnership, such contract is not void and is
not indivisible, but forbids the defendant to engage in competi-
tive business for the term of the contract.  (Post, p. 320.)

---

*Headnotes 1. Fraudulent Conveyances, 27 C. J., section 885; 2.
Fraudulent Conveyances, 27 C. J., section 893; 3. Fraudulent Con-
veyances, 27 C. J., section 893.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.—
HON. D. W. DE HAVEN, Judge.

C. E. CLIFTON and T. K. RIDDICK, for appellant.

HOLMES, CANALE, LOCK & GLANKLER, for appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

York and Ambrose were partners doing a Sporting
Goods business under the name of York-Ambrose Arms
Company, 162 S. Main Street, Memphis.  August 8, 1925,
Ambrose sold to York his half interest in the business,
the terms of sale being set forth in a written contract.
The transfer carried York's interest in the business, the
good will, and the trade name.  The contract contained
a provision as follows:

"I, J. T. Ambrose, covenant with Chas. V. York, that
I will not directly, indirectly, solely or jointly as princi-
pal, agent, manager or otherwise, be concerned or in-
terested in the same character of business heretofore car-

ried on with said York, within the City of Memphis for five years from the date hereof, nor permit it to be done in my name.''

The Chancellor found that on July 19, 1926, that Ambrose in violation of the contract caused a company to be organized under the guise of a corporation, with a capital stock of $25,000 all of which was furnished by him and used by his son, his son-in-law, and two former clerks in carrying on a Sporting Goods business at 132 Main Street.

The Chancellor found that while Ambrose was not an incorporator nor directly connected with the business, that it was organized by his direction and financed by him under the guise of a corporation controlled by his son and others as a means of evading his covenant not to again enter such business.

The Chancellor also found that the contract between York and Ambrose provided that York should assume and pay all debts of the firm; that the partnership as well as individual members of the firm owed debts; that Chapter 133, Acts of 1901, the Bulk Sales Law, was not complied with but that subsequent to the sale all partnership debts were paid by York and that no claim is being made against the partnership assets on behalf of creditors of the individuals.

The Chancellor held that notwithstanding the rights of creditors were not affected by failure of the parties to give notice required by the Bulk Sales Law, and notwithstanding the absence of fraud in fact, that the contract between the parties was void, and he thereupon dismissed the bill filed by York to enjoin Ambrose from violating his agreement not to engage in a competitive business for the period of five years.

The Court of Appeals concurred in the Chancellor's finding of facts and in his conclusions of law, but held the contract divisible so that the covenant of Ambrose not to engage in business for five years could be enforced, notwithstanding the sale was void.

In *Cantrell* v. *Ring,* the seller attempted to avoid compliance with the Statute, and concealed the debts of the business, whereupon the buyer refused to conclude the contract. The seller sued for a breach, and was denied a recovery.

In *Howell* v. *Howell,* C. A. Howell, who sold the goods in violation of the Bulk Sales Law, was compelled to pay the creditors. He attempted to invoke the provisions of the law against subsequent purchasers. The Court said his sale was fraudulent in law, and he was liable for the debts, and having violated the Statute in the first instance, could not invoke it against subsequent purchasers.

(1) Both cases were correctly decided upon the facts. The Bulk Sales Law was intended to protect creditors. *Gilbert* v. *Ashby,* 133 Tenn., 370; *Mahoney-Jones Co.* v. *Sam Bros.,* 128 Tenn., 207.

The Legislature in order to accomplish the purpose declared that all sales of merchandise in bulk without notice to creditors "shall be presumed to be fraudulent and void as to the creditors of the seller." These words convey the meaning that such a sale shall be fraudulent in law, and void as to creditors, whatever it may be in fact. If want of notice attending such a sale renders it void as between the buyer and seller would title pass; if not, it would seem to follow that subsequent creditors of the seller might subject the property of the buyer, after a sale without prejudice to the right of creditors, to the subsequent debts of the seller.

In *Neas* v. *Borches,* 109 Tenn., 398, the Act was sustained against objection that it violated the "due process" and "law of the land" clauses of the Constitution because regulatory and remedial, designed to protect creditors by assuring a fair distribution of the proceeds of goods purchased or assets acquired by sales on credit.

*(2)* In some of the cases the buyer has been subrogated to the rights of creditors whose claims he had paid. *Elledge* v. *Sumpter,* 140 Tenn., 17; *Elledge* v. *Anderson,* 133 Tenn., 483; *Fecheimer-Keifer Co.* v. *Burton,* 128 Tenn., 682.

In *Jaques & Tinsley Co.* v. *Carstarphen Co.,* 131 Ga., 7, mentioned in *Cantrell* v. *Ring, supra,* as declaring sales made without compliance with the Bulk Sales Law absolutely void, the Georgia Supreme Court said:

"While the act was passed with the object of preventing persons in debt, who own stocks of goods, wares, and merchandise, from selling the same in bulk for the purpose of defrauding their creditors, its subject-matter is not fraud in such sales, but is the regulation of them. It prescribed certain duties which must be performed by the buyer, and certain correlative duties which must be performed by the seller. This is regulation, pure and simple. It then, in order to enforce the performance of these duties, declares, in substance, that, unless these duties are complied with, 'such sale or transfer shall, as to any and all creditors of the vendor, be conclusively presumed to be fraudulent.' The meaning of this declaration is that the sale shall, as to such creditors, be fraudulent in law, whatever it may be in fact. This is a declaration of substantive law, and not the enactment of a conclusive rule of evidence for the ascertainment of fraud in such sales. In other words, the sale, as to creditors of the sellers, shall be void, irrespective of the ques-

tion whether it was in fact made for the purpose of defrauding them, because the requirements of the statute enacted for their protection have not been complied with."

Concluding, the Court said: "the Statute lays its requirements across the threshold of the transaction, and in effect declares that no contract of sale, valid as to the creditors of the seller, can be entered into unless these requirements are observed."

*(3)* In *Daly* v. *Drug Co.*, 127 Tenn., 412, the vendee whose purchase was fraudulent in law, attempted to avoid liability as for conversion, by showing that the sale was not in fact fraudulent.

Chief Justice Green in *Keller* v. *Fowler Bros.*, 148 Tenn., 582, referring to *Daly* v. *Drug Co.*, said:

"The court refused to take a distinction between actual fraud and fraud in law in applying the rule that the creditors may have a personal recovery against a fraudulent vendee, as well as a recovery of the specific property conveyed. This case went no further than that, however, and it was not intended to repudiate other well-settled distinctions between the rights of a vendee under a sale fraudulent in fact and those of a vendee under a sale fraudulent only in law."

Penal in character, in derogation of the common law, contrary to the right of individuals to alienate their property without unreasonable restriction, the Statute can not be construed to forbid, as between the buyer and the seller, the sale of merchandise in bulk where no creditors exist or none whose rights are affected.

*(4)* The Act merely declares the sale of goods in bulk without notice fraudulent in law and void as against creditors. To go further and give it the effect of rendering all contracts between the parties void, where cred-

itors are not involved or not affected, would extend the force of the Statute beyond the clear meaning of the language used and give it a force violative of well-known constitutional inhibitions. In the absence of actual fraud and where rights of creditors of the seller are not involved, noncompliance with the Act does not render the sale void. 27 C. J. 887. This was the effect of the holding in *Gilbert* v. *Ashby,* 133 Tenn., 370.

(5) The complainant and defendant filed petitions for *certiorari* through which they seek to review the judgment of the Court of Appeals.

The complainant through his petition insists that the Court of Appeals committed error in holding that as between the complainant and defendant the contract was void.

The defendant insists that the contract was void and not divisible, and that the Court of Appeals committed error in giving effect to the covenant forbidding the defendant to engage in a competitive business within five years.

For the reasons stated in this opinion, we do not concur in the conclusion of the Chancellor nor in the reasoning through which the Court of Appeals reached the result, but concur in the result.

Both writs denied.