## H. G. ARNOLD v. J. EARL MAY et al.

### and

## JAMES MAY v. S. O. HENLEY et al.

Eastern Section. May 15, 1929.

Petition for Certiorari denied by Supreme Court, October 12, 1929.

316

Haggard, Burn & Michael, of Sweetwater, for appellant.

John D. Penland and R. Beecher Witt, of Madisonville, for appellee.

SENTER, J. These causes, while not consolidated in the lower court, were tried at the same time by the Chancellor, on the respective records, and the evidence in each case considered by the Chancellor in both cases. Arnold was the real defendant in the cause of James May v. S. O. Henley et al., and was the complainant in the first cause. Two separate transcripts were sent up on the appeals in this court, but with the agreement that the two causes would be consolidated at the hearing in this court, and reference made to the respective records, since a determination of the causes either favorably or adversely to the appellant would dispose of both appeals.

The first case is the suit of H. J. Arnold v. J. Earl May, et al., and in which cause, the complainant, Arnold, sues the defendant, J. Earl May, on two certain notes aggregating something over $4,000, including the interest and attorneys' fees. These notes were executed by J. Earl May and payable to Sam Lovitz and H. J. Arnold, dated October 19, 1925, and due and payable one and two years after date, respectively, for the sum of $1666.66 each, bearing interest at the rate of 8% per annum under the laws of the State of Florida, where the notes were executed, and these notes provided for the payment of reasonable attorneys' fees, and it was alleged that 10% of the principal and accrued interest on the respective notes would be reasonable attorneys' fees. The complainant became the sole owner and holder of both of said notes in due course.

The Bank of Sweetwater was made a garnishee defendant. The bill alleged that the defendant, J. Earl May, is the owner of a stock of merchandise in Sweetwater, Tennessee, and also a Ford roadster, and other property in the State of Tennessee, but the character of which the complainant had no knowledge. The bill further alleged that the Bank of Sweetwater held certain moneys and assets belonging to the defendant J. Earl May, and also a checking deposit account in said bank. The bill further alleged that said defendant, J. Earl May, was about to fraudulently dispose of his said prop-

erty, and sought an attachment attaching the stock of merchandise, the automobile, and an attachment by garnishment of the funds of the defendant, J. Earl May, alleged to be held by the Bank of Sweetwater; and also sought an injunction restraining the defendant, May, from disposing or attempting to dispose of any property that he may have, and from making any transfer or other disposal of said property, except his stock of merchandise, and that only in the due course of trade, and to keep a correct account of all such merchandise sales, and to render an accounting therefor, and to deposit same in said Bank of Sweetwater; and prayed that the Bank of Sweetwater be required to answer as garnishee under oath, and seeking to have and recover a judgment on the respective notes and to have the attached property applied to the satisfaction of the judgment.

The attachment and injunction writs were issued and the attachments were levied as prayed for.

The defendant, J. Earl May, filed a separate answer, in which he neither denied or admitted that he executed the notes sued on; but admitted that he did execute two notes in the State of Florida to Sam Lovitz and H. J. Arnold, and which said notes were given in the purchase of a tract of land. The answer further alleged that the title to said land was never cleared up; that there was a flaw in the title and that no deed was ever made or accepted by him to said tract of land; and denied that there was any consideration for said notes, or that he had received anything of value for said notes. He denied that the complainant is the owner and holder, in due course, of said notes.

The answer specifically denied that he was the owner of the property set out and described in the original bill, and on which an attachment was issued in this cause, consisting of the stock of merchandise in the town of Sweetwater, and the Ford roadster. The answer alleged that all of said property belonged to his father, James May, and that his said father had already replevied said attached property in a replevin action in the chancery court of Monroe county. He denied that any of said property was subject to a levy for the payment of his debts. He denied that he was the owner of said property on the date of said levy, and that he had been the owner of the same for a period of two years or more, he having sold the same to his said father, James May. He denied that the complainant was entitled to the attachment of said property for his alleged indebtedness to complainant, and denied that complainant was entitled to the injunctive relief sought. He also alleged that the money in the Bank of Sweetwater at the time of the levy of the attachment and the garnishment belonged to his

father, and represented proceeds from the sale of merchandise from the store owned by his father.

The Bank of Sweetwater, as the garnishee defendant, filed a sworn answer, in which said garnishee defendant answered that at the time process was served on said bank in the cause, that it had in its hands to the credit of J. Earl May, the sum of $28.23, which was on October 29, 1927; that after said date deposits were made from day to day until and including November 9, 1927, on which date said bank account was replevied in the cause of James May v. S. O. Henley, Deputy Sheriff, in the chancery court of Monroe county, and on which date there was a deposit in the name of said J. Earl May amounting to the sum of $366.73, and that said garnishee defendant did not have in its possession any other property, monies, debts, or effects of said J. Earl May. The garnishee defendant further answered that it did not know to whom said money belonged, other than it was deposited in the name of J. Earl May, but as to the real ownership of title to same said garnishee defendant had no knowledge. Following the filing of the original bill in the cause of H. G. Arnold v. J. Earl May et al., James May filed an original replevin suit in the same court, alleging that he was the true owner of the property levied upon in the Arnold case, consisting of the stock of merchandise in Sweetwater, the Ford automobile and the bank account or deposit in the Bank of Sweetwater carried in the name of J. Earl May, and made S. O. Henley, the deputy sheriff, the defendant to said replevin suit, said deputy sheriff having levied upon said property and having the same in his possession. By a consent order subsequently made, H. G. Arnold was made the real defendant to that cause. H. G. Arnold answered the bill and denied the allegations of ownership in said property by James May, and alleged that the property previously attached in his suit against J. Earl May belonged to J. Earl May; and further alleged that if there had been any attempted sale of said property by J. Earl May to James May, that the same was a fraud on the creditors of J. Earl May; that the same was in violation of the Uniform Sales Law and in violation of the Bulk Sales Law in effect in this state. Coupled with the answer was a demurrer to so much of the replevin suit as sought to replevy the money garnisheed in the hands of the Bank of Sweetwater. To this extent the demurrer was sustained.

The two causes came on to be heard after proof was taken, and the Chancellor held and so decreed that complainant, H. G. Arnold, was entitled to recover against the defendant, J. Earl May, on the two notes sued on, including the accrued interest to the date of the decree and the attorneys' fees, and decreed a judgment in favor of complainant, H. G. Arnold, and against the defendant, J. Earl

May, for said sum. The Chancellor dismissed the attachment and injunction writs, and held that the attached property, including the bank account, was in fact the property of James May, and accordingly sustained the replevin suit of James May, and decreed the ownership and right of possession of said attached property, including said bank account, to James May, by a decree entered in that cause, separate decrees having been entered in the respective causes.

H. G. Arnold, the complainant in the attachment suit, prayed and was granted an appeal from so much of the decree as decreed a dismissal of the attachments and the injunction; and H. G. Arnold, as the defendant, in the James May replevin suit, prayed an appeal from the decree of the Chancellor sustaining the replevin suit of James May. The appeals have been perfected and errors assigned in the respective cases.

The assignments of error in the respective appeals of H. G. Arnold, will be considered and disposed of in this opinion, without filing separate opinions in the respective cases, this having been agreed to by the parties.

Under the several assignments of error, in the respective cases, it is contended by appellant, (1) that the Chancellor was in error in holding that the property attached and involved was not the property of J. Earl May at the time the same was attached, and in holding and decreeing that said property was not subject to the debt of complainant sued on; (2) and was in error in holding that the attached property was the property of James May; (3) and in holding that under the evidence and the law, James May was entitled to the possession of the attached property, including the bank account, and in sustaining the bill of James May; (4) that under the law and the evidence the alleged sale or attempted sale of the property by J. Earl May to his father, James May, was fraudulent in fact and in law, and in violation of the Uniform Sales Law, and in violation of the Bulk Sales Law in force in this State at the time of the alleged attempted sale by said J. Earl May to his father, James May. These propositions are covered by the several assignments of error in the respective causes.

The facts as disclosed by the record may be summarized and stated as follows: It appears that James May, the father of J. Earl May, was engaged in the mercantile business in Sweetwater, and other extensive operations, when his son, J. Earl May, returned from service in the World War, and that in the year 1919, James May, desiring to assist his son to a start in life, gave him the mercantile business in Sweetwater. Soon thereafter, J. Earl May, established a mercantile business in Tellico Plains, and conducted the two stores until the spring of 1925. J. Earl May had become

considerably involved, owing a considerable sum on wholesale mercantile accounts, bank notes and other indebtedness. This indebtedness at that time amounted to $16,000 or $18,000. In the late spring or early summer of 1925, he went to Florida, and according to the evidence of both J. Earl May and his father, James May, he turned over or sold these two stores, one at Tellico Plains and one at Sweetwater, to his father, for the consideration that his father would pay the indebtedness he then owed on wholesale mercantile accounts, and also a note of about $6500 to the bank. For reasons explained by James May, the business continued to be operated in the name of J. Earl May, and the bank account at the Bank of Sweetwater was continued in the name of J. Earl May. However, it appears that James May, the father, proceeded to pay the bank debt of $6500 which J. Earl May owed to the bank, and soon thereafter sold the grocery department of the Tellico Plains store, and then gradually reduced the stock of merchandise in the Tellico Plains store, and then moved the remnant of the stock of the Tellico Plains store to the Sweetwater store. J. Earl May left for Florida about July 3, 1925, and in October of 1925 he executed the notes sued on in the cause, which notes were given in payment of certain real estate. J. Earl May then returned to Sweetwater, and according to his evidence and the evidence of his father, he entered the employ of his father, James May, on a salary of $125 per month, and conducted the Sweetwater store, and was so employed at the time of the attachment suit. During the time he was operating the store for his father, according to his evidence and the evidence of his father, he and his father purchased the Ford automobile, and according to the evidence of both, James May and J. Earl May, the automobile was paid for, or rather the notes given in purchase of the automobile by J. Earl May, out of the mercantile business then owned by his father, and that while the automobile was purchased and registered in the name of J. Earl May, it was paid for out of the money of James May, according to the evidence of James May and J. Earl May, and according to their evidence the automobile was in fact the property of James May. James May admitted that after his son turned the two stores over to him, or sold the same to him, for the consideration that he would pay off the indebtedness, that he continued to operate the stores under the firm name and style of J. Earl May in the same way and manner that it had been previously operated by his son, and that he did not change the name and style of the business. He testified that he preferred to run the business in the same name, or the same firm name that it had been operated by his son, and one of the reasons therefor was that he did not want to embarrass his son by having it appear that his son had made a failure of the business, and that since he was paying

the debts of the creditors, no one suffered on account of the business continuing under its former trade name of J. Earl May, and for this reason the bank account at the Bank of Sweetwater was carried in the same way, and that in paying debts for merchandise the checks were drawn on the bank account in the name in which the account was kept, viz. J. Earl May. James May was a man of considerable means, and had considerable business interests other than the mercantile business, and during the absence of his son in Florida employed a man to operate the store at Tellico Plains and also at Sweetwater, and that he did not give his personal attention to the operation of the stores, and upon the return of his son from Florida, or soon thereafter, the man who had been employed to operate the Sweetwater store was discontinued in the employment; and J. Earl May became the manager of the store on a salary of $125 per month.

We are of the opinion that these facts appear by a preponderance of the evidence, although there are certain circumstances and some evidence to support the theory that there had never been a sale of the business by J. Earl May to his father, James May.

Appellant, under the assignments of error, earnestly contends, that the way and manner in which the business was operated before and after J. Earl May went to Florida, and after his return from Florida, and the fact that the business continued to be operated in the name of J. Earl May, and the further fact that no publicity was given by either James May or J. Earl May of James May having purchased the stores, and that the public was not given any notice of the alleged sale, is such evidence of fraud as to warrant a conclusion that there had never been a bona-fide sale or transfer of the stock of merchandise by J. Earl May to his father, as contended by the father and son. These facts and circumstances are sufficient to create a presumption that J. Earl May continued to be the owner of the property before and after he went to Florida, and after his return from Florida. But, unless the rights of creditors were adversely affected or that creditors had relied upon the ownership of the business by J. Earl May to their injury, this would be but a rebuttable presumption of ownership in J. Earl May. James May and also J. Earl May testify positively that the business had been turned over or sold to James May, for the consideration that James May pay the accumulated debts of J. Earl May. James May, according to the evidence of the banker, paid the bank debt of $6500, and this payment was made by his own check on his own bank account. Some of the mercantile debts were paid by him, and other of the mercantile debts were paid out of the sales of merchandise after he claimed to have purchased the stores from his son. There was no positive proof to conflict with

this evidence, and we are, therefore, of the opinion that by a preponderance of the evidence these two stores were sold by J. Earl May to his father, James May, for the consideration that James May pay and assume the payment of the debts of J. Earl May, including the bank debt of $6500, and that this transaction occurred about May, 1925, prior to the time that J. Earl May left for Florida, which, according to the evidence, was on July 3, 1925. The notes sued on by Arnold were dated October, 1925, several months subsequent to the sale of the store by J. Earl May to his father. The facts as above stated are as found by the Chancellor.

The question then arises, whether under these facts the complainant Arnold was entitled to have the property attached and subjected to the payment of his notes sued on? It is the contention of appellant that even though the attempted sale was made as claimed by James May and his son, J. Earl May, it was in violation of the Uniform Sales Law in effect in this State, because there had been no change in possession, and that J. Earl May continued in the possession. Certain cases and authorities are cited in support of this contention. However, we concur in the conclusion reached by the Chancellor, that no existing creditors' rights were prejudiced by the sale. The notes sued on by complainant were not executed until October, 1925. The complainant was not a creditor at that time.

It is also contended by appellant that the title in the mercantile stores did not vest in James May for the reason that James May never took possession of the two stores, and that the two stores were never delivered to him, and hence, the attempted sale was void, citing 24 R. C. L., 312-313-314, and the cases cited in the notes. It is further insisted by appellant that the rule of constructive possession would not apply, because a failure of an open and visible change of possession and ownership would result in procuring credit, and would result in frauds on creditors of the seller, citing Cobb v. Heiskell, 14 Me., 303.

We think a complete answer to both these contentions is to be found in the fact that James May did take possession of the two stores after his son went to Florida, and employed a manager to run the Tellico Plains store until the same was closed out, and also sold the stock of groceries carried in connection with the general merchandise store at Tellico Plains, and then removed the remnant of the stock to the Sweetwater store. This was not a mere constructive possession, but actual possession. No existing creditors' rights were prejudiced, but their condition if affected at all, was improved, since, under the terms of the sale, James May assumed to pay, and did pay the debts of J. Earl May existing at the time the sale was made.

Appellant also contends that the sale was void, and a fraud in law, because of the failure to comply with the Bulk Sales Law, and cites and quotes from Cantrell v. Ring, 125 Tenn., 472, and in which case, it is said by Former Chief Justice Shields:

"It lays its requirements across the threshold of the transaction, and in effect declares no contract of sale valid as to creditors of the seller, can be entered into unless these requirements are observed."

The above language is used in construing the Bulk Sales Law in force in Tennessee, and in that case there were creditors' rights that were prejudiced by the sale, but the writer of the opinion in that case, went beyond the real point of the real question involved under the facts, and announced the general proposition, that a failure to comply with the Bulk Sales Law by the seller would be void even though no creditors' rights were prejudiced by the sale, if there were creditors at the time of the sale, and followed the rule announced by the Supreme Court of Georgia, rather than the majority holdings on the subject. However, in the case of York v. Ambrose, 156 Tenn., 314, wherein it appeared that Ambrose and York were partners in a large retail sporting goods business in the City of Memphis, York purchased the interest of Ambrose, and paid to Ambrose about $30,000 for his interest in the business, and in addition assumed the payment of the mercantile accounts which the firm then owed. There was a contract of sale entered into between the parties, whereby for the consideration stated, Ambrose sold to York his one-half interest in the business, including the stock of merchandise, the store fixtures and furniture, the accounts and bills receivable, and the good will of the business. There was a specific provision in the contract by which Ambrose contracted and agreed not to directly or indirectly re-engage in the sporting goods business in the City of Memphis for a term of years. Ambrose, shortly after the sale, violated that provision of the contract by organizing and financing a corporation to engage in the retail sporting goods business in the City of Memphis. Whereupon, York filed a bill against Ambrose, and his associates, by which he sought to enjoin the operation of the sporting goods business by the corporation organized by Ambrose, alleging a violation of the contract. In that case the Chancellor held, under the authority of Cantrell v. Ring, supra, and other Tennessee cases, that because of the failure of the parties to comply with the Bulk Sales Law, by not giving the notice to creditors, etc., the contract was void as a fraud in law, although there was no fraud in fact. On appeal to the Western section of this court, the decree of the Chancellor in dismissing the bill and dissolving the injunction, was reversed, this court holding that under the authority of Cantrell v. Ring, the Chancellor

correctly held that the contract with reference to the sale of the stock of merchandise was void, but this court also held that the contract was divisible, and that the portion of the contract whereby Ambrose contracted and agreed not to re-engage in the business, was enforceable. On certiorari to the Supreme Court in an opinion by Mr. Justice Cook, it was held that both the Chancellor and this court were in error in holding that the contract was void as to the sale of the stock of merchandise and in violation of the Bulk Sales Law, and held that since there were no creditors whose rights were affected by the sale, and since the rights of creditors were protected under the contract of sale, the contract was binding and enforceable, and was not void.

In a still more recent case, Fowler Bros. & Cox v. Davis, 157 Tenn., 662, the alleged failure of the seller of the warehouse stock of merchandise, or the wholesale department of a retail chain store concern, to comply with the Bulk Sales Law, was involved. In that case it was again held by the Supreme Court, in affirming this court, that since the rights of creditors were not involved, the sale was not void, and that the purchaser could recover on certain bonds executed by officers of the seller, guaranteeing future accounts, and also to indemnify in the event there should be creditors whose rights would be prejudiced. It will thus be seen that both in the Ambrose case and in the Fowler Bros. & Cox case, a failure to comply with the Bulk Sales Law will not constitute the sale fraudulent in law unless there were creditors in existence whose rights were affected and prejudiced by the sale.

We have carefully reviewed the record in these causes, and applying the facts as found by the Chancellor and by this court, we are of the opinion that the assignments of error cannot be sustained, and that there was no error in the decree of the Chancellor in the respective suits.

It results that all assignments of error are overruled in the two causes, and the decrees of the Chancellor are affirmed.

Appellant and sureties on the appeal bonds will pay the cost of both appeals.

Owen and Heiskell, JJ., concur.